STATE OF CONNECTICUT *v.* LINDA MURDICK
(8702)

SPALLONE, DALY and LANDAU, Js.

Argued November 1, 1990—decision released January 1, 1991

---

*John R. Williams,* for the appellant (defendant).

*James A. Killen,* assistant state's attorney, with whom, on the brief, were *John Redway,* state's attorney, and *Timothy Liston,* assistant state's attorney, for the appellee (state).

DALY, J. The defendant appeals from a judgment of conviction, after a jury trial, of burglary in the first degree in violation of General Statutes § 53a-101 (a) (1), attempt to commit murder in violation of General Statutes §§ 53a-49 (a) (2) and 53a-54a (a), and assault in the first degree in violation of General Statutes § 53a-59 (a) (1). The defendant claims that the trial court improperly (1) permitted the state to introduce evidence concerning the details of a civil suit brought against the defendant by the alleged victim, (2) disallowed the victim's prior inconsistent statement to be used as substantive evidence, (3) prevented the defendant from impeaching the state's chief witness with two prior felony convictions, (4) charged the jury that it could consider the defendant's false exculpatory trial testimony as evidence of a guilty connection between the defendant and the crimes charged, and (5) denied the defendant the opportunity to present evidence of ineffective assistance of counsel. We affirm the judgment of the trial court.

The jury could have reasonably found the following facts. On May 20, 1988, the victim, Mabel Marshall Gowoc, was shot several times by two assailants in her house in East Haddam, which she occupied with her two young daughters. The victim had been engaged in

a custody battle with her ex-husband, Thomas Smith, whom she divorced in December, 1985. Although Smith and the victim were originally granted joint custody of their daughters, the victim was granted sole custody of the children in July, 1987. Smith took the daughters to Vermont between July, 1987, and March, 1988, and kept them hidden from the victim and the authorities. While in Vermont, Smith lived with the defendant. Upon their return from Vermont, the daughters were returned to the victim's custody and Smith lost all visitation rights. The victim thereafter filed a civil action against Smith and the defendant.

The defendant then importuned a longtime, mutual friend, Vera Lee, to help Smith to regain his custody rights. The defendant and Lee discussed plans to shoot the victim so that Smith could obtain custody of his daughters.

On the morning of May 20, 1988, the defendant met Lee at the house in Meriden where Smith and the defendant lived. The defendant gave Lee a handgun with ammunition and Lee practiced firing the handgun in the defendant's backyard. Later that morning, Lee and the defendant drove to the victim's house in East Haddam, Lee armed with the handgun and the defendant armed with a shotgun. They arrived at the victim's house at approximately noon and Lee approached the house while the defendant remained in the car. The victim answered the door and Lee introduced herself. The victim had known Lee as a friend of Smith's. The victim observed another person in the car and refused to permit Lee to enter the house. Lee offered the victim money in exchange for the children. After hearing this, the victim closed the door. Lee then returned to the car and drove with the defendant to Middletown where they ate lunch and discussed future strategy.

The defendant and Lee returned to the victim's house approximately three hours later. Again, Lee went to the door of the house while the defendant remained in the car. The victim opened the door slightly and Lee repeated her offer of money. The victim then slammed the door shut. Lee drew her handgun and fired two shots through the closed door, hitting the victim twice in the chest. After being shot, the victim locked the door, hid her children in a bathroom closet and then telephoned for assistance. While the victim tried to give the emergency operator information, Lee entered the house and shot the victim another two or three times. Lee ran out of ammunition and left the house, returning to the car. After hearing from Lee that the victim was still alive, the defendant then entered the house and fired her shotgun twice at the victim at close range. The defendant returned to the car and with Lee drove back to Meriden. Paramedics arrived at the victim's home shortly after the defendant and Lee had departed. The victim survived the attack after extensive medical treatment.

## I

The defendant first claims that the state should not have been allowed to introduce evidence concerning the details of the civil suit brought against the defendant by the victim. The victim testified about a pending civil lawsuit filed against the defendant and Smith for tortious interference with the custody of the victim's children. The state also submitted into evidence the writ, summons and complaint of the lawsuit to show a motive for the defendant's action against the victim. The defendant objected on the grounds that this evidence was prejudicial, raised collateral issues and was irrelevant. The court overruled the objection to this evidence but sustained the defendant's objection to the term "kidnapping" in the testimony regarding the civil action. In response to the state's and the defendant's

requests, the court gave the jury a cautionary instruction that this evidence contained unproven allegations against the defendant.[1]

Evidence tending to show prior misconduct of the defendant may be admissible if it is substantially relevant to an important issue in the case, such as motive. *State* v. *Baker,* 182 Conn. 52, 59, 437 A.2d 843 (1980); *State* v. *Marshall,* 166 Conn. 593, 599–600, 353 A.2d 756 (1974). If a court deems such evidence relevant, it must still decide whether the probative value of the evidence outweighs its prejudicial effect. *State* v. *Morowitz,* 200 Conn. 440, 442, 512 A.2d 175 (1986). The court has wide discretion in its rulings on the relevancy of evidence and in determining whether the probative value of the evidence outweighs its prejudicial effect. Reversal is required only where an abuse of discretion is manifest or where injustice appears to have been done. *State* v. *Carr,* 172 Conn. 458, 464, 374 A.2d 1107 (1977).

The record discloses that there was no abuse of discretion in allowing evidence of the civil suit to be introduced. Evidence of motive is a highly relevant factor for assessing the guilt or innocence of a defendant. *State* v. *Harris,* 182 Conn. 220, 223–24, 438 A.2d 38 (1980). The evidence of the civil suit was probative of the motive or intent of the defendant and was part of the history of the dispute between the parties. See *State* v. *Hoeplinger,* 9 Conn. App. 147, 156, 517 A.2d 632 (1986), rev'd on other grounds, 206 Conn. 278, 537 A.2d 1010 (1988). Therefore, the evidence of the civil suit was a relevant factor in understanding the defendant's

---

[1] The trial court instructed the jury as follows:

"The Court: The jury is cautioned that as to that document if is a civil action, it is not a criminal action. It is a civil action where allegations have been made, apparently that action is still pending, nothing in that action has been proven or established at this time."

relationship to Smith and, thus, her motive to attack the victim. See *State* v. *Hoyeson,* 154 Conn. 302, 307, 224 A.2d 735 (1966).

Having established relevancy, we next inquire whether the trial court abused its discretion in ruling that the probative value of this evidence outweighed its prejudicial effect. The record discloses that the trial court conducted this balancing test by hearing all of the evidence before permitting it to go to the jury. See *State* v. *Holliday,* 159 Conn. 169, 173–74, 268 A.2d 368 (1970). The court sustained the defendant's objection to the use of the term "kidnapping" and further cautioned the jury that the evidence of the lawsuit contained only unproven allegations. Proper limiting instructions often mitigate the prejudicial impact of evidence of prior misconduct. *State* v. *Ryan,* 182 Conn. 335, 338 n.5, 438 A.2d 107 (1980); see *State* v. *Rodriguez,* 210 Conn. 315, 333, 554 A.2d 1080 (1989) (the jury is presumed to have followed the court's instructions). The defendant failed to except to this instruction or to suggest an alternative. This failure further weakens the defendant's claim of prejudice. *State* v. *Conroy,* 194 Conn. 623, 628, 484 A.2d 448 (1984). Although this evidence was damaging to the extent that it may have indicated further criminal activity in addition to that alleged in the information, it was not prejudicial in the sense that it was inflammatory or likely to arouse the passions of the jury. We cannot say as a matter of law that the trial court abused its discretion in conducting this balancing process.

The defendant argues that even if the victim's testimony concerning the lawsuit was properly admitted, it would nevertheless be improper to admit the writ, summons and complaint. The defendant has the burden of proving the harmfulness of any alleged erroneous admission of evidence, when, as here, it does not involve a constitutional issue. *State* v. *Silva,* 201 Conn.

244, 250, 513 A.2d 1202 (1986). The written allegations contained in the exhibit essentially repeated the admissible testimonial evidence of the lawsuit. The defendant has failed, however, to establish that any prejudice or harm resulted from the victim's testimony regarding the lawsuit. Thus, even if the exhibit was incorrectly admitted, its admission would be harmless because it was cumulative and merely corroborated admissible testimony. *State* v. *Robinson,* 213 Conn. 243, 259–60, 567 A.2d 1173 (1989); *State* v. *Kwaak,* 21 Conn. App. 138, 151, 572 A.2d 1015, cert. denied, 215 Conn. 811, 576 A.2d 540 (1990). In view of the trial court's careful balancing and considered determination that this evidence was relevant and more probative than prejudicial, the court properly admitted the evidence of the civil suit.

## II

The defendant next claims that the victim's testimony concerning the description of Lee's companion was inconsistent with the description contained in her written statement to the police dated June 14, 1988.[2] The defendant argues that the written statement was admitted as an exhibit and that the jury should have been charged that it was admissible for the truth of the statements therein and not merely for impeachment purposes as the court charged.

The record indicates that the following colloquy occurred subsequent to the court's limiting instruction to the jury:

"The Court: Before the jury is brought back, and so we can clarify the record regarding defendant's exhibit

---

[2] In her statement, the victim stated that Lee's companion, the second woman who had shot her, was only 5 feet 5 inches tall, had salt and pepper hair, was wearing slacks and a blouse, and was only one to two inches taller than Lee. In her courtroom testimony, she asserted that Lee's companion was 5 feet 8 inches tall and wore a raincoat.

one, which was a statement by the victim, the court gave a limiting instruction as to the use of that statement, that it was, namely, to be used for impeachment purposes only. The defense counsel objected to that limiting instruction, do you have a position on that objection now?

"[Defense Counsel]: Yes, Your Honor, I'm going to withdraw my objection to the limiting instruction and I understand that the statement will be used for impeachment purposes only.

"The Court: Does the state have any comment on that?

"[Prosecutor]: No comment, Your Honor."

Under Practice Book § 4185, we may review only those claims that have been clearly raised in the trial court. A reasonable interpretation of the transcript is that, after hearing the remarks of the court, defense counsel conceded that the limiting instruction was proper and withdrew his objection. *State* v. *Kim,* 17 Conn. App. 156, 157, 550 A.2d 896 (1988). We will not review on appeal rulings that the defendant requested or accepted at trial. *State* v. *Rutan,* 194 Conn. 438, 446, 479 A.2d 1209 (1984). Thus, the defendant's claim does not merit review.[3] See *State* v. *Holloway,* 209 Conn. 636, 649, 553 A.2d 166, cert. denied, 490 U.S. 1071, 109 S. Ct. 2078, 104 L. Ed. 2d 643 (1989). Even if the error had been properly preserved, the defendant has failed to prove the harmfulness of that error because it is highly unlikely that the inconsistent description contributed significantly to the jury's verdict when the victim was una-

[3] The trial court's ruling limiting the admissibility of the evidence to impeachment purposes is also not entitled to review under the *Evans-Golding* criteria; *State* v. *Golding,* 213 Conn. 233, 239–40, 567 A.2d 823 (1989); or under the plain error doctrine. Practice Book § 4185; see *State* v. *Ruiz,* 202 Conn. 316, 521 A.2d 1025 (1987).

ble to identify the defendant as one of her assailants. See, e.g., *State* v. *Silva,* 201 Conn. 244, 250–51, 513 A.2d 1202 (1986).

## III

The defendant next claims that she should have been allowed to cross-examine Lee concerning Lee's two convictions on July 23, 1969, for fraudulently obtaining controlled drugs and obtaining controlled drugs by forgery. The trial court sustained the state's objections on the grounds that the defendant had not established that these offenses were felonies, and, if she had, that they were too remote in time.

The Supreme Court has interpreted General Statutes § 52-145[4] to mean that a conviction of a crime, whether or not it is denominated as a felony, is admissible only if the maximum permissible penalty for the crime is imprisonment for more than one year. *State* v. *Geyer,* 194 Conn. 1, 10, 480 A.2d 489 (1984). The defendant did not demonstrate that these convictions were punishable by imprisonment in excess of one year, despite the notice of the state's objection to the lack of such a foundation. Therefore, the trial court did not abuse its discretion in denying the cross-examination concerning the prior convictions. See *State* v. *Diorio,* 12 Conn. App. 74, 78–79, 529 A.2d 1320, cert. denied, 205 Conn. 813, 532 A.2d 587 (1987), cert. denied, 484 U.S. 1065, 108 S. Ct. 1025, 98 L. Ed. 2d 990 (1988).

Even if we were to assume that these convictions were punishable by imprisonment in excess of one year, convictions are not admissible per se but are admissi-

---

[4] General Statutes § 52-145 provides: " (a) A person shall not be disqualified as a witness in any action because of, (1) his interest in the outcome of the action as a party or otherwise, (2) his disbelief in the existence of a supreme being, or (3) his conviction of crime.

"(b) A person's interest in the outcome of the action or his conviction of crime may be shown for the purpose of affecting his credibility."

ble for impeachment purposes at the trial court's discretion. *State* v. *Roman,* 6 Conn. App. 189, 191, 504 A.2d 529 (1986). One factor that a court employs in considering whether to admit such convictions is their remoteness in time.[5] Id. The rule in Connecticut more closely follows the federal ten year rule; *State* v. *Harrell,* 199 Conn. 255, 262, 506 A.2d 1041 (1986); and "[i]t is a rare prior conviction which is more than ten years old which retains the minimal probative value sufficient to overcome its prejudice." *State* v. *Roman,* supra, 192. Here, the court's decision that Lee's prior convictions which were considerably more than 10 years old were not admissible due to remoteness in time was clearly within the court's sound discretion. See, e.g., *Thomas* v. *Rose,* 10 Conn. App. 71, 72, 521 A.2d 597 (1987) (the defendant not allowed to impeach the plaintiff with two twelve year old felony convictions for possession of heroin and possession with intent to sell); *State* v. *Roman,* supra, 190 (a thirteen year old conviction for possession of heroin not allowed for impeachment of victim).

## IV

The defendant next claims that the trial court improperly instructed the jury when it charged it as follows: "If an accused should attempt to make false statements respecting herself and her conduct concerning the matter on trial you may consider this as evidence tending to show a guilty connection by the accused with the crimes charged." Both the defendant and the state requested this charge and so it is obvious that the defendant took no exception to it. The defendant now claims that this charge constituted plain error and is

---

[5] In conducting a balancing test weighing the probative values against the prejudicial dangers, a trial court considers (1) the extent of the prejudice likely to arise, (2) the significance of the particular crime in indicating untruthfulness, and (3) the remoteness in time of the conviction. *State* v. *Geyer,* 194 Conn. 1, 11, 480 A.2d 489 (1984).

error of constitutional magnitude, thus warranting review both under Practice Book § 4185 and under the *Evans-Golding* criteria. *State* v. *Golding,* 213 Conn. 233, 239–40, 567 A.2d 823 (1989); *State* v. *Evans,* 165 Conn. 61, 327 A.2d 576 (1973).

The defendant induced the alleged error by requesting the very instruction she now claims was constitutionally infirm. The Connecticut Supreme Court has held that error induced by an appellant cannot be grounds for reversal and will not be reviewed. *State* v. *Ross,* 189 Conn. 42, 47, 454 A.2d 266 (1983). Even induced error, however, if constitutional in magnitude, may warrant review under *Evans-Golding. State* v. *Hinckley,* 198 Conn. 77, 81 n.2, 502 A.2d 388 (1985); *State* v. *Foshay,* 12 Conn. App. 1, 25, 530 A.2d 611 (1987). Thus, as a threshold matter we must determine if the defendant has raised a claim that meets the *Evans-Golding* criteria. *State* v. *Golding,* supra.

Although the defendant labels her claim as constitutional, she has failed to establish that the error, if any, is truly of constitutional proportions. A jury cannot, as the defendant claims it did, infer facts from its disbelief of the defendant's testimony; *State* v. *Coleman,* 14 Conn. App. 657, 676, 544 A.2d 194, cert. denied, 208 Conn. 815, 546 A.2d 283 (1988); and thereby dilute the state's burden of proof; *State* v. *Perez,* 10 Conn. App. 279, 283, 523 A.2d 508, cert. denied, 203 Conn. 810, 525 A.2d 524 (1987); or impermissibly burden the defendant's right to testify. *State* v. *Coleman,* supra, 675. Contrary to the defendant's assertions, a review of the court's charge does not support her claim. An examination of the court's instruction, as a whole, leads us to conclude that use of the phrase "tending to show a guilty connection by the accused with the crimes charged" was addressing the defendant's consciousness

of guilt, albeit inartfully.[6] *State* v. *Brown,* 199 Conn. 14, 26–27, 505 A.2d 690 (1986). A trial court may appropriately instruct a jury to consider a defendant's false testimony at trial as evidencing consciousness of guilt. *State* v. *Brown,* supra; *State* v. *Coleman,* supra, 676–77, and cases cited therein.

Even if this phrase allowed the jury to consider the defendant's false testimony as evidence of guilt, this would not necessarily require reversal because it was harmless. See, e.g., *State* v. *Brown,* supra. Here, as in *Brown,* the defendant complains of a few words in a lengthy instruction that was otherwise correct. There was substantial evidence of guilt even without the defendant's testimony. The defendant also has not indicated which of her statements the jury could have misused. Therefore, the record does not support the defendant's contention that this instruction led the jury to convict her contrary to her constitutional rights or her right to a fair trial. See *State* v. *Brown,* supra. We conclude that the defendant has not raised a cognizable constitutional claim, or shown that she was clearly deprived of a fair trial, and, thus, we decline further review. See *State* v. *Golding,* supra, 239–40; *State* v. *Day,* 12 Conn. App. 129, 134, 529 A.2d 1333 (1987); *State* v. *Vilhotti,* 11 Conn. App. 709, 713, 529 A.2d 235 (1987); cf. *State* v. *Hinckley,* supra, 81 n.2 (because we hold that the defendant's induced error is not an exceptional circumstance within *Evans-Golding,* we need not consider the problems that may arise when a defendant induces error that actually implicates constitutional rights). Finally, the defendant's claim does not approach plain error because there is no evidence of

---

[6] In view of *State* v. *Brown,* 199 Conn. 14, 26–27, 505 A.2d 690 (1986), it would have been more appropriate for the trial court to employ the phrase "consciousness of guilt" rather than the phrase "guilty connection by the accused with the crimes charged."

manifest injustice under all of the circumstances of the case. Practice Book § 4185; see *State* v. *Hinckley,* supra, 87–88.

## V

The defendant's final claim is that she was deprived of the opportunity to present evidence to the trial court substantiating her claim of ineffective assistance of counsel. The defendant sought to raise this claim through a motion for a new trial. The motion came before the court prior to sentencing and the defendant sought to present evidence to establish her claim. The trial court refused to grant her an evidentiary hearing and denied the motion.

In her motion for a new trial, the defendant sought to introduce evidence that was not included in the trial record. A motion for a new trial pursuant to Practice Book § 902[7] is limited to trial errors appearing on the record. *State* v. *Jones,* 205 Conn. 723, 730, 535 A.2d 808 (1988). This motion is distinguished from a petition for a new trial pursuant to Practice Book § 904[8] in which a defendant seeks a new trial based on newly

---

[7] Practice Book § 902: "Upon motion of the defendant, the judicial authority may grant him a new trial if it is required in the interests of justice. Unless the defendant's noncompliance with these rules or with other requirements of law bars his asserting the error, the judicial authority shall grant the motion:

"(1) For an error by reason of which the defendant is constitutionally entitled to a new trial; or

"(2) For any other error which the defendant can establish was materially injurious to him.

"If the trial was by the court and without a jury, the judicial authority, with the defendant's consent and instead of granting a new trial, may vacate any judgment entered, receive additional evidence, and direct the entry of a new judgment."

[8] Practice Book § 904: "A request for a new trial on the ground of newly discovered evidence shall be called a petition for a new trial and shall be brought in accordance with Gen. Stat. § 52-270. The judicial authority may grant the petition even though an appeal is pending."

discovered evidence. *State* v. *Servello,* 14 Conn. App. 88, 101, 540 A.2d 378, cert. denied, 208 Conn. 811, 545 A.2d 1107 (1988).

The trial court's decision is consistent with the Supreme Court's decision in *State* v. *Jones,* supra, where the court reasoned that if new evidence is to be introduced by the defendant, a petition for a new trial pursuant to Practice Book § 904 is mandated. *State* v. *Jones,* supra. Claims of ineffective assistance of counsel should be brought in collateral proceedings, either by way of a petition for a new trial or a petition for a writ of habeas corpus. *State* v. *Leecan,* 198 Conn. 517, 541–42, 504 A.2d 480, cert. denied, 476 U.S. 1184, 106 S. Ct. 2922, 91 L. Ed. 2d 550 (1986); *State* v. *Rish,* 17 Conn. App. 447, 454, 553 A.2d 1145, cert. denied, 211 Conn. 802, 559 A.2d 1137, cert. denied, 493 U.S. 818, 110 S. Ct. 71, 107 L. Ed. 2d 38 (1989).

The judgment is affirmed.

In this opinion the other judges concurred.