STATE OF CONNECTICUT *v.* DARREN CROSBY
(11533)

DUPONT, C. J., LAVERY and FREEDMAN, Js.

Argued December 13, 1993—decision released May 3, 1994

*Deborah DelPrete Sullivan,* assistant public defender, with whom was *G. Douglas Nash,* public defender, for the appellant (defendant).

*Jack W. Fischer,* assistant state's attorney, with whom, on the brief, were *John M. Bailey,* chief state's attorney, and *Warren Maxwell,* senior assistant state's attorney, for the appellee (state).

DUPONT, C. J. The state charged the defendant with robbery in the first degree in violation of General Statutes § 53a-134 (a) (3) and assault in the first degree in violation of General Statutes § 53a-59 (a) (1).[1] The jury found the defendant not guilty of the first count, but guilty of the second count. The defendant appeals from the judgment of conviction of assault in the first degree. We reverse that judgment.

The defendant claims that the trial court improperly (1) permitted the state to introduce and use evidence of the defendant's silence, (2) prevented him from questioning the state's medical expert about his opinion as to an essential element of the crime charged, (3) instructed the jury that it could consider false testimony of the defendant as evidence of a guilty connection with the crimes charged, and (4) instructed the jury regarding the concept of reasonable doubt.

---

[1] General Statutes § 53a-59 provides in pertinent part: "(a) A person is guilty of assault in the first degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument . . . ."

On August 3, 1991, William Walko attended a party on Maple Street in Enfield. Shortly after arriving, Walko left the party to go across the street to a friend's second floor apartment to use the bathroom. While there, Walko and the defendant engaged in a fight that moved into the hall and to the top of a stairway outside the apartment. During the fight, Walko and the defendant fell down the stairway. Walko landed on his back, with the defendant falling on top of him. Walko testified that the defendant separated himself from the fight and ran out the front door of the apartment building. Walko attempted to chase the defendant, but collapsed. Someone then pointed out to Walko that he had blood on his shirt. Walko removed his shirt and discovered a puncture wound. Walko stated that he had not seen a knife during the struggle, but a witness testified that she saw the defendant stab at Walko's chest with a knife while Walko tried to restrain the defendant at the bottom of the stairway.

Walko was treated at a hospital by Timothy Emhoff, a surgeon. Emhoff diagnosed Walko as having a stab wound to the left chest, a collapsed left lung, bleeding in the left chest cavity, and risk of injury to the heart. Emhoff testified that the wound placed the heart and lung at risk of serious injury, and caused a substantial risk of death. He also stated that Walko could completely recover from the injury, except for a scar.

The defendant testified at trial, admitting that he had been in a fight with Walko, but denying that he had stabbed or robbed him.

I

The defendant makes two claims regarding the state's use of the defendant's prearrest and postarrest silence.[2] These claims relate to cross-examination of

[2] Because of the resolution of the defendant's claim as to postarrest silence, we need not consider his claim as to prearrest silence.

the defendant and to comments of the state's attorney made during closing arguments. The defendant contends that the trial court improperly allowed the state to introduce and comment on the defendant's prearrest and postarrest silence in violation of the defendant's constitutional rights to due process as defined in *Doyle* v. *Ohio,* 426 U.S. 610, 96 S. Ct. 2240, 49 L. Ed. 2d 91 (1976), and in violation of the rules of evidence. The defendant did not object to the state's cross-examination of the defendant or its closing remarks to the jury. He seeks to prevail under *State* v. *Golding,* 213 Conn. 233, 567 A.2d 823 (1989), or the doctine of plain error review.[3]

Under *Golding,* a defendant can prevail on an unpreserved claim of constitutional error "only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." Id., 239–40. The first two conditions are determinations of whether a defendant's claim will be reviewed, and the third condition involves a review of the claim itself. *Wilson* v. *Cohen,* 222 Conn. 591, 603, 610 A.2d 1177 (1992); *State* v. *Graham,* 33 Conn. App. 432, 442, 636 A.2d 852 (1994); see also *State* v. *Thurman,* 10 Conn. App. 302, 306, 523 A.2d 891, cert. denied, 204 Conn. 805, 528 A.2d 1152 (1987).

---

[3] We need not consider a claim on appeal unless it was distinctly raised at the trial or arose subsequent to the trial. Practice Book § 4185. "This court reviews rulings solely on the ground on which the party's objection is based." *State* v. *Manning,* 162 Conn. 112, 118, 291 A.2d 750 (1971); *State* v. *Busque,* 31 Conn. App. 120, 127, 623 A.2d 532, cert. granted on other grounds, 226 Conn. 910, 628 A.2d 984 (1993).

During cross-examination, the state asked the defendant when he had heard that Walko had been stabbed. The defendant responded that he had heard of it about two weeks after their fight. The state then asked the defendant whether he went to the police after hearing that Walko had been stabbed, or whether he told anyone about the incident prior to trial. The defendant responded that he did not go to the police, and that he spoke only to his attorney about the incident prior to trial. The defendant also testified that he did not go to the police to report the incident the night it occurred.[4]

On three occasions during its closing remarks to the jury, the state commented on the defendant's lack of communication with the police. The state argued that because the defendant did not come forward, he had six or seven months[5] during which to fabricate a story

---

[4] After the defendant stated that he heard of the stabbing about two weeks after the incident, the following questions were asked and the following responses were elicited during cross-examination of the defendant:

"Q. What did you do about that?

"A. Nothing.

"Q. Did you go to the police?

"A. No, I did not.

"Q. Tell them what you saw?

"A. I didn't know if they were—

"Q. Just yes or no, sir.

"A. No, I did not.

"Q. Didn't tell us what you're telling us today?

"A. No, I did not.

"Q. First time you've told anyone about this is now when you're testifying. Is that correct?

"A. I spoke to my lawyer about this. . . .

"Q. You never said anything to the police that night?

"A. No, I did not."

[5] The stabbing occurred on August 3, 1991, and the defendant was arrested on August 16, 1991. The defendant's trial began on March 2, 1992, and the defendant testified on March 16, 1992.

and get it "lined up" with defense witnesses, who also did not come forward prior to the trial.[6]

The state's use for impeachment purposes of a defendant's silence following his receipt of *Miranda*[7] warnings violates due process. *Doyle* v. *Ohio, supra,* 426 U.S. 619; *State* v. *Joly,* 219 Conn. 234, 256, 593 A.2d 96 (1991); *State* v. *Plourde,* 208 Conn. 455, 465, 545 A.2d 1071 (1988), cert. denied, 488 U.S. 1034, 109 S. Ct. 847, 102 L. Ed. 2d 979 (1989). Silence following *Miranda* warnings is "insolubly ambiguous" because it may be nothing more than a defendant's exercise of his or her *Miranda* rights. *Doyle* v. *Ohio, supra,* 617; *State* v. *Apostle,* 8 Conn. App. 216, 223, 225, 512 A.2d 947 (1986). Once the government assures a defendant through the issuance of *Miranda* warnings that his silence will not be used against him, it is fundamentally unfair for the state to break that promise by using his silence against him at trial. *Wainwright* v. *Greenfield,* 474 U.S. 284, 292, 106 S. Ct. 634, 88 L. Ed. 2d 623 (1986); *Doyle* v. *Ohio, supra,* 618. Comments by the state on a defendant's silence following *Miranda* warnings are not only constitutionally impermissible, but also inadmissible under the princi-

---

[6] The state made the following three separate comments during its closing statement to the jury: "[The night of the incident, the defendant] didn't go to the police to help them out at all because he didn't hear about it until two weeks later, he says to you. Now, where is the truth there? A tangled web we weave. [A defense witness] went on to tell you that [he and the defendant] talked about it on numerous occasions since it occurred and never said a word to anybody until they came here. That's six or seven months to fabricate and to get their stories lined up. . . . [F]rom the moment of the fight up until this trial, [the defendant and two defense witnesses] have had six to seven months to talk about this and they have talked about it on numerous occasions, of what they were going to say. They never said a word to a soul until they came here. . . . Where does the fabrication— if it's fabrication—lie? Where were those people, who never came forward at any time until the trial?"

[7] *Miranda* v. *Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

ples of evidence.[8] *State* v. *Leecan,* 198 Conn. 517, 526, 504 A.2d 480, cert. denied, 476 U.S. 1184, 106 S. Ct. 2922, 91 L. Ed. 2d 550 (1986).

The principles of *Doyle* do not apply where the record fails to indicate "that the silence of a defendant had been preceded by a *Miranda* warning . . . ." *State* v. *Leecan,* supra, 198 Conn. 524; see also *Fletcher* v. *Weir,* 455 U.S. 603, 607, 102 S. Ct. 1309, 71 L. Ed. 2d 490 (1982). In this case, the record fails to reveal whether the defendant had personally received *Miranda* warnings prior to the silence about which the state commented. The defendant, nevertheless, argues that the giving of warnings at his arraignment on August 23, 1991, pursuant to General Statutes § 54-1b and Practice Book § 637, triggers the application of *Doyle.*

In *State* v. *Leecan,* supra, 198 Conn. 531, our Supreme Court stated that it did not "regard the advice given by a court or a clerk pursuant to these provisions as the functional equivalent of a *Miranda* warning given by the police prior to custodial interrogation. It is not as explicit, and is thus not so likely to induce silence in reliance upon it." General Statutes § 54-1b and Practice Book § 637 require the trial court to inform a defendant at the time of his arraignment that he has a right to counsel and a right to remain silent, and that any statement he makes may be used against him. *Miranda* requires the government to inform a defendant of these three rights, and it also requires the government to inform a defendant that if he is indigent, counsel will be appointed for him.

---

[8] Although comments about a defendant's postarrest silence are inadmissible under the rules of evidence, a defendant must seasonably object to the comments in order to obtain appellate review. *State* v. *Leecan,* 198 Conn. 517, 526–27, 504 A.2d 480, cert. denied, 476 U.S. 1184, 106 S. Ct. 2922, 91 L. Ed. 2d 550 (1986).

We conclude that the facts in this case are distinguishable from those in *State* v. *Leecan,* supra, 198 Conn. 531. First, in *Leecan,* the defendant asked the court to take judicial notice of the probability, based on the requirements of General Statutes § 54-1b and Practice Book § 637, that at some point between his arrest and trial he would have been advised of his constitutional right to remain silent. The defendant in *Leecan* sought judicial notice because he was unable to point to anything in the record to show that he received either *Miranda* or arraignment warnings regarding his right to remain silent. In this case, although the record does not show the giving of *Miranda* warnings per se, the record does disclose that, at arraignment, the trial court advised the defendant of his constitutional right to remain silent.[9]

Second, in *State* v. *Leecan,* supra, 198 Conn. 531, the court based its holding in part on the fact that "neither the police nor any other government personnel can reasonably be deemed to have induced the defendant's postarrest silence, as is essential to support a claimed violation of *Doyle.*" The court reached this conclusion because the defendant in *Leecan* had testified that he had remained silent on the advice of his attorney, not

[9] At the defendant's arraignment on August 23, 1991, the trial court issued the following warning: "Let me advise those of you who are to appear before the court for the first time of some of your constitutional rights. You should know that you have a right to remain silent concerning the matters that bring you here today. You may speak to an attorney concerning your case. You are in a court of law. You have a right to talk to a lawyer before you decide whether to answer anyone's questions. If you decide to answer questions, you have a right to have a lawyer with you while you're being questioned and you have a right to stop answering questions at any time that you choose. You each have a right to be represented by an attorney of your choice. If you need time to obtain and consult with a lawyer, the court will grant you a reasonable continuance for that purpose. If you can't afford an attorney, you may make an application for the appointment of the public defender and if you qualify for the services of the public defender, I'll appoint one to represent you without any cost to you."

as a result of official warnings. In this case, we cannot determine from the defendant's testimony whether he relied on warnings from the trial court or the advice of counsel. Unlike the defendant in *Leecan,* the defendant in this case may have remained silent as a result of the warnings he received from the trial court at his arraignment.

Because the defendant received arraignment warnings regarding silence in the company of other defendants in attendance at the arraignment, and it is possible that the defendant relied on these warnings, we conclude that the warnings in this case are sufficient to trigger the application of *Doyle.* Here, the arraignment warnings served as *Miranda* warnings to inform the defendant of his right to remain silent. As a result, we will consider the defendant's *Doyle* claim under *Golding.*

The first two conditions of *Golding* are met here. An adequate record for review exists because the record indicates that the defendant received arraignment warnings regarding the right to remain silent, and the defendant's claim is constitutional in nature because it alleges a violation of due process under *Doyle.* We must, therefore, consider the merits of the defendant's claim. Here, the state violated due process by commenting on the defendant's postarrest silence during cross-examination and closing argument. See *State* v. *Williams,* 27 Conn. App. 654, 661, 610 A.2d 672, cert. denied, 223 Conn. 914, 614 A.2d 829 (1992). We conclude that this constitutional violation clearly deprived the defendant of a fair trial. See *State* v. *Golding,* supra, 213 Conn. 240.

We must next determine whether the violation is harmless beyond a reasonable doubt. A *Doyle* violation is harmful if there is a reasonable possibility that the impermissible questions or comments contributed to

the conviction. *State* v. *Robles,* 33 Conn. App. 60, 64, 632 A.2d 1377 (1993). The harmfulness of the comments depends on their impact on the trier and on the result. Id. "A *Doyle* violation may, in a particular case, be so insignificant that it is clear beyond a reasonable doubt that the jury would have returned a guilty verdict without the impermissible question or comment . . . . [W]hen there is but a single reference at trial to the fact of [the] defendant's silence, the reference is neither repeated nor linked with [the] defendant's exculpatory story, and the exculpatory story is transparently frivolous and evidence of guilt is otherwise overwhelming, the reference to [the] defendant's silence constitutes harmless error. . . . The [error] has similarly been [found to be harmless] where a prosecutor does not focus upon or highlight the defendant's silence in his cross-examination and closing remarks and where the prosecutor's comments do not strike at the 'jugular' of the defendant's story." (Citations omitted; internal quotation marks omitted.) *State* v. *Canty,* 223 Conn. 703, 711, 613 A.2d 1287 (1992); see also *State* v. *Williams,* supra, 27 Conn. App. 661–62.

In this case, the state questioned the defendant about his postarrest silence and then argued three times during its closing remarks that, since the defendant had remained silent prior to trial, he had had time to fabricate an exculpatory story. Thus, the state repeatedly highlighted the defendant's postarrest silence and linked this silence to the defendant's explanation at trial. As a result, a reasonable possibility exists that the impermissible questions and comments contributed to the defendant's conviction, and the *Doyle* violation was not harmless beyond a reasonable doubt.[10]

[10] The defendant alternatively claimed that the principles of *Doyle* v. *Ohio,* supra, 426 U.S. 610, apply as soon as the defendant is represented by counsel, even when no warnings regarding the right to remain silent are given to the defendant.

"The point of the *Doyle* holding is that it is fundamentally unfair [for the

The case is remanded for a new trial. We will consider the remaining claims of the defendant because they are likely to recur at the new trial.

## II

The defendant claims that the trial court improperly prevented him from questioning the state's medical expert, Emhoff, about his opinion as to whether the victim, Walko, had suffered serious physical injury. The defendant contends that his constitutional right of confrontation was violated, and, in the alternative, that the trial court abused its discretion.

In order to convict a defendant of the crime of assault in the first degree in violation of General Statutes § 53a-59 (a) (1), the state must prove beyond a reasonable doubt that the defendant, "[w]ith intent to cause *serious physical injury* to another person," caused such an injury. (Emphasis added.) A "serious physical injury" includes a "physical injury which creates a *substantial risk of death* . . . ." (Emphasis added.) General Statutes § 53a-3 (4).

During cross-examination, the defendant asked Emhoff whether he believed that Walko, after his treatment at and release from the hospital, was at a substantial risk of death due to his injuries. The state did not object to the question, and Emhoff answered that the posttreatment risk of death to Walko was perhaps one in one million or one in one thousand.

The defendant then asked Emhoff the same question, in virtually the same form. The state objected to the

state] to promise an arrested person that his silence will not be used against him and thereafter to breach that promise by using the silence to impeach his trial testimony." *Wainwright* v. *Greenfield,* supra, 474 U.S. 292; *State* v. *Plourde,* supra, 208 Conn. 466. When counsel is appointed, no promise is made by the state on which a defendant can rely. The principles of *Doyle* do not extend to comments on silence after counsel has been appointed or retained, in the absence of government assurances regarding silence.

question on the grounds that "that's not the law." The court sustained the objection on the ground of relevancy, stating that successful medical intervention does not prevent a life threatening injury from being a serious physical injury. The defendant took an exception, claiming that the evidence was relevant.[11]

"The confrontation clauses of both the federal and state constitutions grant a criminal defendant the right to confront all witnesses who testify on behalf of the state." *State* v. *Lewis,* 25 Conn. App. 354, 357, 594 A.2d 489, cert. denied, 220 Conn. 914, 597 A.2d 336 (1991). "The right to cross-examine adverse witnesses is not absolute, however, and limitations on the scope of cross-examination are within the sound discretion of the trial court, as long as the defendant has been allowed sufficient cross-examination to meet the requirements of the confrontation clause." Id., 357–58.

Thus, we must first determine whether the trial court allowed minimum cross-examination to satisfy the constitutional requirements for confrontation. *State* v.

---

[11] During the defendant's cross-examination of Emhoff, the following colloquy occurred:

"Q. Doctor, because of the fact that this individual was treated, subsequent to his treatment he was not at any substantial risk of death. Would that be a fair statement?

"A. No.

"Q. In other words, after you treated him, you healed him, you released him from the hospital—

"A. Oh, after his release from the hospital—

"Q. Yes. Yes.

"A.—was he at risk of death?

"Q. Right.

"A. After his release? He—maybe one in a million, one in a thousand from the particular wound that he suffered.

"Q. So that when you released him from the hospital, you certainly didn't believe, in your medical opinion, that he was at any substantial risk of death based on the injuries that you treated?"

The state objected to this question, and the court sustained the objection. The defendant took an exception.

*Colon,* 28 Conn. App. 231, 235, 611 A.2d 902, cert. denied, 223 Conn. 922, 614 A.2d 827 (1992). In order to satisfy these standards, the court must allow the defendant "to expose to the jury the facts from which the jurors, as the sole triers of fact and credibility, [can] appropriately draw inferences relating to the reliability of the witness." (Internal quotation marks omitted.) *State* v. *Gaynor,* 182 Conn. 501, 509, 438 A.2d 749 (1980); see also *State* v. *Colon,* supra, 235. If the constitutional standards for confrontation are satisfied, we must next determine whether the trial court abused its discretion by restricting cross-examination. *State* v. *Colon,* supra, 235. "To establish an abuse of discretion, it must be shown that restrictions imposed on cross-examination were clearly prejudicial." (Internal quotation marks omitted.) *State* v. *Lewis,* supra, 25 Conn. App. 360.

The defendant claims that because "serious physical injury" is an essential element of the charged crime, the trial court violated his right of confrontation by not allowing a more extensive cross-examination of Emhoff. The defendant argues that the question was necessary to show the jury that the risk of death had passed after a very short period of time, and that, inferentially, the wound was never a serious physical injury.

The defendant further contends that the question would test the reliability of the witness. The defendant argues that he wanted to test Emhoff's reliability by asking him whether a risk of death of one in one million or one in one thousand is "substantial." According to the defendant, the answer would affect the jury's assessment of Emhoff's opinion that Walko's injuries placed him at a substantial risk of death at the time of the incident.

The defendant did not except to the trial court's refusal to allow the question on the ground that he had

a right to test the reliability of the witness, but on the ground that the question was relevant. The question, however, was irrelevant because the element of "serious physical injury" relates to the time the injury is inflicted, not to some time subsequent to medical treatment. See *State* v. *Woodard,* 11 Conn. App. 499, 504, 528 A.2d 404, cert. denied, 205 Conn. 802, 531 A.2d 940 (1987).

The defendant now seeks to prevail under *State* v. *Golding,* supra, 213 Conn. 239–40. The first two conditions of *Golding* are met here because there is an adequate record for review and the right of confrontation is constitutional in nature. *State* v. *Lewis,* supra, 25 Conn. App. 357. Upon a review of the merits, however, we conclude that there was no constitutional violation that clearly deprived the defendant of a fair trial.

When a defendant questions a state's witness about an essential element of a crime, he is generally allowed "a more extensive inquiry" into the reliability of the witness. See id., 358. In this case, the transcript indicates that the defendant extensively questioned Emhoff in an effort to challenge his reliability, including questioning him about the victim's posttreatment condition.

In fact, the defendant asked Emhoff the challenged question in virtually the same form without objection by the state. The defendant received an answer from Emhoff that exposed to the jurors facts from which the jury " 'could appropriately draw inferences relating to the reliability of the witness.' " *State* v. *Gaynor,* supra, 182 Conn. 509. The evidence sought to be elicited by the question in issue was essentially cumulative, and the refusal to allow the question was not improper. See *State* v. *Monteeth,* 208 Conn. 202, 210, 544 A.2d 1199 (1988).

### III

The defendant challenges the following portion of the trial court's instructions to the jury: "If an accused

should attempt to make a false statement with respect to himself and his conduct concerning the matter on trial, you may consider that as evidence tending to show guilty connection by the accused with the crime charged." The defendant claims that the instruction violated his constitutional rights under the fifth and fourteenth amendments to the United States constitution and article first, § 8, of the Connecticut constitution by diluting the state's burden of proof and by burdening the defendant's right to testify. At trial, the defendant did not object to this instruction. He seeks to prevail under *State* v. *Golding,* supra, 213 Conn. 239–40.

We conclude that the defendant's claim is controlled by our decision in *State* v. *Murdick,* 23 Conn. App. 692, 583 A.2d 1318, cert. denied, 217 Conn. 809, 585 A.2d 1233 (1991), which considered a *Golding* challenge to the same jury instruction. In *State* v. *Murdick,* supra, 702, we stated that the phrase " 'tending to show a guilty connection by the accused with the crimes charged' " addressed the defendant's consciousness of guilt. Since "[a] trial court may appropriately instruct a jury to consider a defendant's false testimony at trial as evidencing consciousness of guilt," the challenged instruction does not amount to a constitutional violation that clearly deprived the defendant of a fair trial. Id., 703.

## IV

The defendant challenges the following portions of the trial court's jury instructions regarding the concept of reasonable doubt: "A reasonable doubt is a doubt for which a valid reason can be assigned," and "[i]t is a doubt for which you can in your mind conscientiously give a reason." The defendant claims that the instructions violated the defendant's constitutional rights under the fifth and fourteenth amendments to

the United States constitution and article first, § 8, of the Connecticut constitution by diluting the state's burden of proof. At trial, the defendant did not object to these instructions. He seeks to prevail under *State* v. *Golding,* supra, 213 Conn. 239–40.

We conclude that the defendant's claim is controlled by *State* v. *Campbell,* 225 Conn. 650, 626 A.2d 287 (1993), and *State* v. *Derrico,* 181 Conn. 151, 434 A.2d 356, cert. denied, 449 U.S. 1064, 101 S. Ct. 789, 66 L. Ed. 2d 607 (1980). In *State* v. *Campbell,* supra, 661–62, the Supreme Court held that the "valid reason" instruction did not amount to a clear deprivation of a constitutional right, and in *State* v. *Derrico,* supra, 170–71, held the same as to the "conscientious reason" instruction. No constitutional violation, therefore, exists that clearly deprived the defendant of a fair trial.

The judgment of conviction is reversed and the case is remanded for a new trial.

In this opinion the other judges concurred.