STATE OF CONNECTICUT *v*. MARK C. LYONS
(11299)

HEIMAN, SCHALLER and FREEDMAN, Js.

Argued September 13—decision released November 15, 1994

*Jerome J. Rosenblum,* assistant public defender, for the appellant (defendant).

*James M. Ralls,* assistant state's attorney, with whom, on the brief, were *Eugene Callahan,* state's attorney, and *Bruce Hudock,* assistant state's attorney, for the appellee (state).

HEIMAN, J. The defendant appeals from a judgment of conviction, rendered after a jury trial, of sexual assault in the first degree in violation of General Statutes § 53a-70[1] and burglary in the third degree in violation of General Statutes § 53a-103.[2] The defendant was found not guilty of a separate count of sexual assault in the first degree. On appeal, the defendant claims that the trial court improperly (1) failed to conduct an inquiry into alleged jury misconduct and (2) twice gave the jury a so called "Chip Smith" charge.[3] The defendant's claim concerning the absence of the trial judge from the bench during the voir dire was withdrawn at the time of the oral argument.[4]

---

[1] General Statutes § 53a-70 (a) provides in pertinent part: "A person is guilty of sexual assault in the first degree when such person (1) compels another person to engage in sexual intercourse by the use of force against such other person . . . or by the threat of use of force against such other person . . . which reasonably causes such person to fear physical injury to such person . . . ."

[2] General Statutes § 53a-103 (a) provides: "A person is guilty of burglary in the third degree when he enters or remains unlawfully in a building with intent to commit a crime therein."

[3] The "Chip Smith" charge was developed in the case of *State* v. *Smith,* 49 Conn. 376, 386 (1881), to instruct the jury as to its duties in the event of deadlock. The jurors are charged, inter alia, to "pay proper respect to each other's opinions, and listen with candor to each other's arguments" in order to arrive at an unanimous verdict. Id.

[4] See *State* v. *Patterson,* 230 Conn. 385, 645 A.2d 535 (1994), reversing this court's holding that the absence of the trial judge from the courtroom during voir dire in a criminal trial is per se reversible error.

The jury could reasonably have found the following facts. In September, 1990, the victim met the defendant at a nightclub in Port Chester, New York. Thereafter, a relationship developed between them, and for the next three weeks the defendant and the victim saw each other almost daily. At that time, the victim and the defendant began a voluntary sexual relationship.

In October, 1990, the defendant began looking for an apartment with a friend. In the interim, the victim allowed the defendant to move into her apartment in Greenwich, which she occupied with two roommates. By December, the defendant had stopped working and the relationship began to deteriorate. The financial strain of supporting herself and the defendant eventually became unbearable for the victim. In addition, the defendant began to show signs of jealousy and would become outraged when male friends or exboyfriends called the victim. In order to alleviate their situation, the victim encouraged the defendant to look for work and often loaned him her vehicle so that he could get to job interviews.

By January, 1991, the relationship between the defendant and the victim had become more strained. They fought frequently and the victim decided that she wanted the defendant to leave the apartment, but the defendant refused. On or about February 20, 1991, the victim received a telephone call from the White Plains, New York, police department. She was informed that the defendant had been arrested and that her car had been used in the commission of a crime. The news of the defendant's criminal activities upset the victim sufficiently for her to tell the defendant that their relationship was at an end. The victim collected the defendant's belongings from her apartment and had them removed by a friend of the defendant.

Throughout February, the defendant continued to call the victim, attempting a reconciliation. He claimed

that if she would not see him at her apartment, he would follow her to work or to her parents' house. He began sleeping in the victim's basement, and the victim became frightened of the defendant's obsessive behavior.

On three occasions in March, 1991, the defendant appeared uninvited at the victim's apartment and forced her to have sexual intercourse with him. The victim did not report any of these instances to the police because she was afraid of the defendant and because she believed that the defendant would soon be going to jail for the incident in White Plains. She did, however, tell the police that the defendant had been physically abusive and that he had come into her apartment uninvited. On March 27, 1991, she obtained a restraining order against the defendant.

On April 15, 1991, the defendant entered the victim's apartment through a window while she was asleep. The victim awoke to see the defendant standing in the doorway of her bedroom. The defendant entered the room and locked the door. He then turned on the radio and turned up the volume. The victim hurried to pull on a pair of jeans that were on the floor by her bed, but the defendant restrained her from getting dressed. When the victim reminded the defendant that she had a restraining order against him, he laughed and said, "I am going to jail anyway. . . . It doesn't matter if I have a rape on my record." When she asked him if he was going to rape her, he replied, "Yes."

The victim curled herself into a ball on the bed so that the defendant could not touch her in a sexual manner. The defendant grabbed her from behind and covered her mouth. He then pulled off her shirt and brassiere, climbed on top of her, and had sexual intercourse with her.

After the defendant ejaculated, he got up from the bed while the victim lay crying. When she got up to go to the bathroom, the defendant followed her and watched her. He then walked her back into the bedroom and had sexual intercourse with her again, despite her sobbing and asking him to stop. As soon as the defendant left, the victim called the police to report that she had been sexually assaulted.

Jury deliberations commenced on November 19, 1991. On November 21, 1991, at approximately 12:10 p.m., the trial court received a note from the jury foreperson stating: "Currently we are at an impasse. We can agree on one count and are not in agreement on the other two counts. There appears to be no movement by the jurors to agree." As a result of the indication of possible jury deadlock, the trial court gave the jury a "Chip Smith" charge.[5] *State* v. *Smith*, 49 Conn. 376, 386 (1881).

At approximately 2:20 p.m., the proceedings resumed and the jury foreperson presented the trial court with

---

[5] The supplemental charge was as follows: "Although the verdict to which each of you agrees must express his or her own conclusion and not be a mere acquiescence in the conclusions of your fellow jurors, yet in order to bring six minds to a unanimous result you should consider the questions you have to decide not only carefully but also with due regard and deference to the opinions of each other.

"In conferring together you ought to pay proper respect to each other's opinion and listen with an open mind to each other's arguments. If much the larger number of you reach a certain conclusion, a dissenting juror or jurors should consider whether his or her opinion is a reasonable one when the evidence does not lead to a similar opinion in the minds of the other jurors, men and women who are equally honest and equally intelligent, who have heard the same evidence with the same attention, with equal desire to arrive at the truth and under the sanction of the same oath.

"If a majority of you are for one position, the minority ought to seriously ask themselves whether in reason they should adhere to their own conclusion when those conclusions are not concurred in by most of those with whom they are associated and whether it might not be well to distrust the weight or sufficiency of the evidence upon which the minority rely when that evidence fails to bring the minds of their fellow jurors to the same conclusion they have reached."

another note. This note read as follows: "One of the jurors has made it plain that he/she had made up her mind prior to the trial how he/she would vote based on the presence or absence of specific testimony. He/she claims to have made her stand clear to the prosecuting attorney in the voir dire. This specific testimony is not in the evidence that has been presented to us. He/she is basing his/her decision on the fact that specific testimony has not been introduced in evidence. We are at an impasse." The trial court instructed the jurors that they were not to consider anything not in evidence. The trial court stated in part: "It's not a popularity contest to be determined by which lawyer you think has done a better job. That's not what this is about. It's not about that at all. . . . It's not about what hasn't been introduced as evidence. It's only about what has been introduced as evidence. And you're not entitled to draw any inferences from the lack of any evidence."

The trial court then repeated the Chip Smith charge and concluded, "Now with that additional instruction I would ask you to retire to the deliberating room and see if you can't agree on a unanimous verdict on all three counts." Once the jury had retired, the trial court asked counsel whether there were any exceptions to its answer to the jury's questions. Counsel for the defendant took exception only to the reference of the court to the case's not being a "popularity contest" between the lawyers but offered no objection to the second Chip Smith charge.[6]

---

[6] The objection by counsel for the defendant was as follows:

"The Court: Does the defense have any objection?

"Counsel: I have some exception I think to Your Honor's last charge.

"The Court: Very well.

"Counsel: Not the—the charge on consent was actually my request, so I have no exception to that, but—

"The Court: Very well. But I'd like to hear what that is . . .

"Counsel: I think that there were references that the court made that may create the wrong impression or give the wrong inference to the jury—

At approximately 4:38, the jury returned with a verdict, finding the defendant guilty of one count of sexual assault in the first degree and one count of burglary in the third degree. The jury returned a not guilty verdict on the second count of sexual assault in the first degree. This appeal followed.

## I

The defendant first asserts that the trial court improperly failed to make an inquiry into possible jury misconduct, thereby violating his constitutional right to a fair trial by an impartial jury. The defendant contends that the court should have made such an inquiry, sua sponte, upon receipt of the note concerning possible jury misconduct. Because the issue was not properly preserved at trial and does not meet the requirements for review enumerated in *State* v. *Golding,* 213 Conn. 233, 567 A.2d 823 (1989), we decline to review the defendant's claim.

"The Court: Well, tell me what they were—

"Counsel: All right. Specifically—

"The Court:—and if they are valid I'll bring them out again.

"Counsel:—your reference to it not being a popularity contest between attorneys and it's not a question of evaluating whether an attorney is doing a good job—

"The Court: Right.

"Counsel:—in presenting certain evidence. We don't really even know if that is the problem.

"The Court: No, we don't.

"Counsel: And I think it's injecting another train of thought really into the problem here when you've got a jury who's been out not two days trying to work this out and I think that I have to take exception to those remarks because I really don't think they were called for based on the problem that was presented to us.

"The Court: Very well. Obviously I do not agree with you, but I agree wholeheartedly with your ability to take an exception and your exception is noted for the record.

"Counsel: Thank you, Your Honor.

"The Court: Is there anything else?

"Counsel: No, Your Honor."

## A

Generally, when evidence of possible juror misconduct is brought to the attention of the trial court, the court should determine whether the defendant has been prejudiced. *State* v. *Migliaro,* 28 Conn. App. 388, 396, 611 A.2d 422 (1992). " 'There is no magic formula that the trial court must follow in conducting this inquiry. Rather, it must use whatever inquisitorial tools are necessary and appropriate to determine whether there was a "reasonable possibility" of prejudice.' " Id., quoting *United States* v. *Savage,* 701 F.2d 867, 871 (11th Cir. 1983).

Counsel for the defendant did not, however, request any inquiry of the jury. Upon receipt of the note that a juror considered basing her decision on the absence of specific testimony, the trial court repeated its instruction that the jury consider only that evidence that had been properly admitted at trial. After dismissing the jury for further deliberations, the trial court gave counsel an opportunity to object to its response to the note. Counsel for the defendant objected only to a comment by the trial court that the trial was not a "popularity contest" between the lawyers and that the jury's decision should not turn on which lawyer the jury thought did a better job. Counsel did not request that the jury be polled or that the court make further inquiry into what the juror was considering.

The defendant posits, however, that an inquiry into the possible misconduct should have been undertaken by the trial court sua sponte, thus relieving him of his burden to request such action. In support of this contention, the defendant relies on *State* v. *Migliaro,* supra, 28 Conn. App. 388, and *State* v. *Gonzalez,* 25 Conn. App. 433, 596 A.2d 443 (1991), aff'd, 222 Conn. 718, 609 A.2d 1003 (1992). Although both cases sup-

port the proposition that an inquiry should be made to determine whether the defendant was prejudiced, in neither case did the court act in the absence of a request by counsel. In *State* v. *Migliaro,* supra, 392, counsel for the defendant specifically stated his concern about the possibility that a juror had been exposed to extrinsic evidence and asked the court the proper way to handle the situation. In *State* v. *Gonzalez,* supra, 438, counsel for the defendant and the state both objected to the trial court's refusal to address the jury's concern that one of its members had been exposed to extrinsic evidence. Neither case mandates any action by the trial court to investigate misconduct absent a request by counsel.

Here, the defendant neither requested an inquiry to clarify the reason behind the note from the jury, nor objected to the trial court's failure to make such an inquiry sua sponte. The defendant's objection was limited to the trial court's comments regarding the trial's not being a popularity contest.

Practice Book § 4185 provides in part: "The court on appeal shall not be bound to consider a claim unless it was distinctly raised at the trial . . . ." To preserve this claim for appellate review, the defendant should have either requested that the trial court conduct an inquiry to determine the juror's conduct or taken an exception to the trial court's decision not to act sua sponte. The defendant failed to do either.

### B

The defendant asserts that even if his claim was not properly preserved at trial, it is entitled to review under the standards enunciated in *State* v. *Golding,* supra, 213 Conn. 233. "Under *Golding,* a defendant can prevail on an unpreserved claim of constitutional error 'only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error;

(2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt.' " *State* v. *Crosby*, 34 Conn. App. 261, 264, 641 A.2d 406, cert. denied, 230 Conn. 903, 644 A.2d 916 (1994), quoting *State* v. *Golding*, supra, 239–40.

"The first two conditions [of *Golding*] are determinations of whether a defendant's claim will be reviewed, and the third condition involves a review of the claim itself." *State* v. *Crosby*, supra, 34 Conn. App. 264. This court "remain[s] free to dispose of the claim by focusing on whichever condition is most relevant in the particular circumstances." (Internal quotation marks omitted.) *State* v. *Pinnock*, 220 Conn. 756, 778, 601 A.2d 521 (1992). Here, by not providing us with an adequate record to review his claim, the defendant has failed to satisfy the first condition enunciated in *Golding*.

The note from the jury was ambiguous in that it did not describe the conduct at issue. The defendant assumes that the juror was considering extrinsic evidence, while the note also permits an inference that the juror was considering the effect of the absence of particular evidence. Without such essential information, it is impossible for us to determine whether the actions of the trial court were sufficient under the circumstances.

"Our Supreme Court has stated in *Golding* that, '[t]he defendant bears the responsibility for providing a record that is adequate for review of his claim of constitutional error. If the facts revealed by the record are insufficient, unclear or ambiguous as to whether a constitutional violation has occurred, we will not attempt

to reconstruct the record, or to make factual determinations, in order to decide the defendant's claim.' " *State* v. *Strikcani,* 34 Conn. App. 691, 693, 642 A.2d 1228 (1994). We, therefore, will not afford review of this unpreserved claim.

## II

The defendant next asserts that the trial court improperly repeated the Chip Smith charge to the jury. The defendant failed to preserve this claim properly at trial and we conclude that it is not entitled to review under *State* v. *Golding,* supra, 213 Conn. 233.

As stated in part I, the transcript shows that the defendant objected only to the trial court's reference to the proceedings not being a popularity contest. The defendant did not object to the substance of the second Chip Smith charge, nor did he claim that repetition of the charge was coercive to dissenting jurors. The defendant did not, therefore, properly preserve this claim.

The defendant claims, however, that he is entitled to review under *Golding.* In support of his claim of entitlement to a *Golding* review, the defendant posits that the repetition of the Chip Smith charge deprived him of his constitutional right to a jury that has not been coerced into determining his guilt or innocence. His claim is, in essence, that the second charge, combined with the trial court's instruction to the jurors to "retire to the deliberating room and see if you can't agree on a unanimous verdict," coerced them into returning a verdict that the defendant considers to be a compromise.

Despite the constitutional labels attached to this claim by the defendant, we conclude that the defendant has failed to meet the second prong of *Golding.* "Patently nonconstitutional claims that are unpreserved at trial

do not warrant special consideration simply because they bear a constitutional label." Id., 240.

This court and our Supreme Court have consistently upheld various forms of the Chip Smith charge designed to overcome possible jury deadlock. *State* v. *Pinnock,* supra, 220 Conn. 795, citing *State* v. *O'Neill,* 200 Conn. 268, 281–84, 511 A.2d 321 (1986); *State* v. *Jones,* 193 Conn. 70, 91–92, 475 A.2d 1087 (1984); *State* v. *Avcollie,* 188 Conn. 626, 641–42, 453 A.2d 418 (1982), cert. denied, 461 U.S. 928, 103 S. Ct. 2088, 77 L. Ed. 2d 299 (1983); *State* v. *Stankowski,* 184 Conn. 121, 145–47, 439 A.2d 918, cert. denied, 454 U.S. 1052, 102 S. Ct. 596, 70 L. Ed. 2d 588 (1981); *State* v. *Martinez,* 173 Conn. 541, 378 A.2d 517 (1977); *State* v. *Ralls,* 167 Conn. 408, 425, 356 A.2d 147 (1974); *State* v. *Schleifer,* 102 Conn. 708, 725, 130 A. 184 (1925). Such a charge does not coerce a jury, but rather reminds jurors of their duties in the deliberative process. *State* v. *Ralls,* supra, 424. The Chip Smith charge is a balanced statement that "makes clear the necessity, on the one hand, of unanimity among the jurors in any verdict, and on the other hand the duty of careful consideration by each juror of the views and opinions of each of his fellow jurors . . . ." Id., 424–25.

The charge given here closely resembles the Chip Smith charge developed in *State* v. *Smith,* supra, 49 Conn. 386. It in no way coerces dissenting jurors into subverting their opinions to those of the majority, but urges each juror to consider the questions before the jury with "due regard and deference to the opinions of each other" in an effort to arrive at a unanimous verdict. Although the charge does call on dissenting jurors to reevaluate their conclusions, such a charge is not coercive when considered in its totality.

In addition, despite the defendant's claims, repetition of an otherwise appropriate charge does not cre-

ate an atmosphere of coercion that may threaten a defendant's constitutional right to a fair trial. See *State* v. *Pinnock,* supra, 220 Conn. 796 (upholding actions of trial court that read Chip Smith charge to jury twice in immediate succession); *State* v. *Ralls,* supra, 167 Conn. 423–25 (repetition of Chip Smith charge viewed by Supreme Court as corrective of other remarks allegedly coercing jury to agree on verdict).

"Just as every claim of evidentiary error by the trial court is not truly constitutional in nature; see, e.g., [*State* v. *Golding,* supra, 213 Conn. 241]; every claim of instructional error is not truly constitutional in nature. We have recognized, for example, that claimed instructional errors regarding the elements of an offense; see, e.g., *State* v. *Boles,* 223 Conn. 535, 543, 613 A.2d 770 (1992); and claimed instructional errors regarding the burden of proof or the presumption of innocence; see, e.g., *State* v. *Adams,* 225 Conn. 270, 289, 623 A.2d 42 (1993); are constitutional in nature, so as to satisfy the second *Golding* requirement." *State* v. *Walton,* 227 Conn. 32, 64–65, 630 A.2d 990 (1993). On the other hand, claimed instructional errors regarding general principles of credibility of witnesses have been held to be nonconstitutional in nature; *State* v. *Tatum,* 219 Conn. 721, 738, 595 A.2d 322 (1991); as have claimed instructional errors regarding the jury's duty objectively to consider the evidence before them. *State* v. *Walton,* supra, 64–65.

The Chip Smith charge from *State* v. *Smith,* supra, 49 Conn. 386, resembles those instructions held to be nonconstitutional in nature in *State* v. *Tatum,* supra, 219 Conn. 738, and *State* v. *Walton,* supra, 227 Conn. 64–65. The Chip Smith charge does not concern the elements of a crime, but deals only with the role of the jurors and their duties during the deliberative process. We, therefore, conclude that the defendant's claim is

not of constitutional magnitude and does not allege the violation of a fundamental right. *State* v. *Golding,* supra, 213 Conn. 239.

The judgment is affirmed.

In this opinion the other judges concurred.