STATE OF CONNECTICUT *v.* LUIS COLON
(13022)

LAVERY, SCHALLER and HENNESSY, Js.

Argued January 3—decision released April 25, 1995

tion into evidence of the vial was to link Rodriguez, and, thus, the defendant, to the crime.

*Neal Cone,* assistant public defender, for the appellant (defendant).

*Mary Elizabeth Baran,* assistant state's attorney, with whom, on the brief, was *Michael Dearington,* state's attorney, for the appellee (state).

LAVERY, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of assault of an employee of the department of correction in violation of General Statutes § 53a-167c (a) (1). On appeal, the defendant claims that (1) the instructions on the jurors' duties caused unfair prejudice, (2) during its instructions on the credibility of witnesses, the trial court unfairly emphasized the defendant's interest in the outcome of the case, (3) the trial court's instructions on reasonable doubt were improper, and (4) the trial court improperly gave a Chip Smith charge, at least in the language used and under the circumstances of this case. We affirm the judgment of the trial court.

The jury could reasonably have found the following facts. On September 17, 1992, state correction officer Mohammed Redzep was assaulted by a group of inmates at the Manson youth institution in Cheshire. Redzep was twenty-four years old and had been employed by the state as a correction officer for just over three years. While in uniform, Redzep was bringing inmates back into the institution from the outside recreation area at about 7:20 p.m., when he observed a group of inmates huddled in a corner of the dayroom. Noting that this was suspicious conduct on the part of the inmates, he told correction officer Freida Rogers to keep an eye on that group of inmates.

Redzep resumed his duties, but moments later saw Rogers talking to the same group of inmates. Redzep approached them and instructed the inmates to disperse. One of the inmates, Joey Jones, said, "Okay, let's set it off," and he tried to punch Redzep. The officer grabbed Jones under his arm. Redzep was then assaulted from behind and knocked to the ground facedown. The officer was kicked and punched from several directions. He was struck on his head and all over his body. Being facedown, he could not see his assailants. He was, however, able to determine that there were more than two assailants because he was being hit and kicked from several directions.

Rogers called an emergency code and all available correction officers were summoned to the scene. Shortly thereafter, Redzep was taken by ambulance to St. Mary's Hospital in Waterbury. John Magaldi, a physician, examined him and found that he had sustained a mild concussion, a lumbro-sacral strain and abrasions.

Redzep was able to identify only two of the inmates involved in the attack, Gregorio Pizzaro and Jones. There were two other corrections officers, however, who were able positively to identify the others involved, including the defendant.

Rogers was standing close to Redzep and the inmates when the incident took place. She identified all six of the inmates involved, including the defendant. She saw the defendant throwing punches at Redzep. She attempted to get the inmates away from Redzep, but was unsuccessful. She then went to the office and called an emergency code. A number of officers responded to the code. Rogers was instructed by her supervisor immediately to identify all of the inmates who were involved. She did so.

Correction Officer Rafael Delvalle was on duty as a "rover" at the time of the incident. His assignment was

to walk around the institution, checking both C and D blocks. He was in D block when the incident took place and observed five or six inmates, including the defendant, assaulting Redzep. He saw the defendant kick Redzep. The emergency code was set off by Rogers subsequent to Delvalle's arrival on the scene.

Correction Lieutenant Michael Bernier testified that he considered himself an expert on gangs in the prisons and that he did all of the staff training on gang related issues. He said that he considered this incident to be gang related. He testified that the defendant was known to be a member of the Latin Kings gang and that the five other inmates involved in the attack were members of Los Solidos gang. He testified that members of different gangs cooperate at times.

## I

The defendant first claims that the trial court's instruction concerning the jurors' duties was unfairly weighted in favor of conviction. The instruction was: "The defendant justly relies on you to carefully consider his claims. To carefully consider all the evidence and to find him not guilty if the facts and the law require such a verdict. He rightfully expects fair and just treatment at your hands. The state of Connecticut and its people, on the other hand, look to you as sworn officers of this court to deal fairly, firmly, honestly and justly as strong-minded persons, with the interests of the state in your hands as an arm of the court to aid in upholding the law of the land and to render a verdict of guilty if the facts and the law require such a verdict. It is proper for me to say to you that you are not to be concerned with the punishment to be inflicted in this case if a conviction occurs. That is a matter exclusively within the province of the court under the limitations and restrictions imposed by the statute. You are to find the facts of guilt or innocence

uninfluenced by the probable punishment which follows convictions." The defendant failed to object to this language at trial and thus seeks review under *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989).

The defendant argues that the language referring to the jury as an arm of the court in connection with a conviction presents an unbalanced and prejudicial instruction. This claim does not meet the second prong of *Golding*, as it is not a constitutional issue. Our Supreme Court has held that such language (1) did not raise an issue of constitutional dimension and (2), even if it was considered to have raised such an issue, taking the instructions as a whole, there was no reasonable possibility that the jury was misled into believing it would be performing its duties only if it voted to convict. *State* v. *Francis*, 228 Conn. 118, 134, 635 A.2d 762 (1993); *State* v. *Walton*, 227 Conn. 32, 62, 630 A.2d 990 (1993). The trial court's instructions in the present case are almost identical to those upheld in *Walton* and *Francis*.The trial court's charge on the jurors' duties was not improper.

## II

The defendant next claims that the court's jury instructions on the credibility of witnesses, which included references to his interest in the outcome of the trial, deprived him of a fair trial and impermissibly burdened his right to testify in his own defense.

The jury was given the following charge: "In this case, the accused took the stand and testified. In weighing the testimony of any accused person, you should apply the same principles by which the testimony of other witnesses is tested. And that necessarily involves a consideration of his interest in the outcome of this case. You will consider the importance to him of the outcome of the trial. An accused person, having taken the witness stand, stands before you then just like any

other witness. He is entitled to the same consideration and must have his testimony measured in the same way as any other witness, including, however, his interest in the verdict which you are about to render."

After the jury had been deliberating for about one and one-half days without reaching a verdict, the court reinstructed it on three areas, including the credibility of witnesses. In this portion of the court's charge, there was no specific mention of the defendant's interest in the outcome of the case.

The defendant, although acknowledging that "fair comment" on the intent of the accused is permitted, claims that the trial court's instructions exceeded "fair comment." The courts of this state have consistently approved the use of this instruction when the defendants have exercised their right to testify. Both this court and our Supreme Court have rejected the claim that such an instruction violates a defendant's constitutional rights to a fair trial or due process. *State* v. *Williams*, 220 Conn. 385, 396–97, 559 A.2d 1053 (1991).

In *Williams*, our Supreme Court rejected a challenge to the trial court's mentioning the defendant's interest on three different occasions. The court concluded that the continual emphasis was to ensure that the jury evaluate the defendant's testimony the same as that of other witnesses. "We have repeatedly approved the use of similar language and do not find its use here unduly repetitive or transcending the bounds of even-handedness." Id., 397.

Similarly, in this case, the instruction used by the trial court is couched in the same commonly accepted language that has been used to ensure that the jury fairly weigh the testimony of witnesses, including that of the defendant. The court correctly instructed the jury that it should consider the defendant's testimony in light

of his interest in the outcome. The trial court's use of this instruction that has been approved repeatedly did not violate the defendant's right to a fair trial.

### III

The defendant next challenges the trial court's instructions on reasonable doubt. The court's instructions were: "Now the phrase reasonable doubt has no technical or unusual meaning. You can arrive at the true meaning of it by emphasizing the word reasonable. A reasonable doubt is a doubt for which a valid reason can be assigned. It is a doubt which is something more than a guess or surmise. It is not a conjecture or a fanciful doubt. A reasonable doubt is not a doubt which is raised by someone simply for the sake of raising doubts. Nor is it a doubt suggested by the ingenuity of counsel or a juror which is not warranted by the evidence. It is not hesitation springing from feelings of sympathy for the accused or any other persons who might in anyway be affected by your decision. A reasonable doubt, in other words, is a real doubt, an honest doubt, a doubt which has its foundation in the evidence or the lack of evidence. It is such a doubt as in the serious affairs which concern you in everyday life, you would pay some attention to. It is the kind of doubt which would cause reasonable people such as yourselves to hesitate to act on the more serious and important affairs of your lives. Now, absolute certainty of course in the affairs of life is almost never attainable. And the law does not require absolute certainty on the part of the jury before it returns a verdict of guilty. What the law does require, however, is that after hearing all of the evidence, if there is something in that evidence which leaves in the minds of the jury as reasonable men and women a reasonable doubt of the guilt of the accused, then the accused must be given the benefit of that doubt and found not guilty. Proof beyond a reasonable doubt is proof which precludes every reason-

able hypothesis except guilt, is consistent with guilty, and is inconsistent with any other reasonable conclusion. If you can, in reason, reconcile the facts proven with any reasonable theory consistent with the innocence of the accused, then you cannot find him guilty. In other words it is incumbent upon the state to negate every supposition not in itself unreasonable or improbable which is consistent with innocence. The requirement that for conviction that evidence must be such as satisfies you beyond a reasonable doubt does not mean that proof must be beyond a possible doubt or, and a possible supposition of innocence is a far different thing from reasonable hypothesis." Two days after the original instructions, the court gave further instruction on reasonable doubt to the jury because it was deadlocked.

The defendant raises several claims pertaining to the language used by the trial court in its instructions on reasonable doubt. Because claims almost identical to the defendant's claims have been previously reviewed and rejected by this court and our Supreme Court, there is no need to conduct more than a cursory review of them.

The defendant's "valid reason" claim is rejected as it has been held constitutional numerous times. *State* v. *Williams*, 231 Conn. 235, 254, 645 A.2d 999 (1994). The "ingenuity of counsel" language has been upheld several times as well. *State* v. *Payne*, 31 Conn. App. 370, 379–80, 625 A.2d 231, cert. denied, 227 Conn. 901, 630 A.2d 73 (1993); *State* v. *Harvey*, 27 Conn. App. 171, 192–94, 605 A.2d 563, cert. denied, 222 Conn. 907, 608 A.2d 693 (1992). The "real doubt, honest doubt" instruction has also been upheld by this court and our Supreme Court. *State* v. *Findlay*, 198 Conn. 328, 502 A.2d 921, cert. denied, 476 U.S. 1159, 106 S. Ct. 2279, 90 L. Ed. 2d 721 (1986); *State* v. *Lamme*, 19 Conn. App. 594, 607, 563 A.2d 1372 (1989), aff'd, 216 Conn. 172,

579 A.2d 484 (1990). Finally, the "hesitate to act" instruction has been upheld. *State* v. *Johnson*, 214 Conn. 161, 177–80, 571 A.2d 79 (1990). Our Supreme Court in *Johnson* stated its preference for the "causing to hesitate" language used in this case over similar variations. Id.

There is no merit to this claim.

## IV

Finally, the defendant challenges the trial court's Chip Smith charge[1] given after the jury reported that it was deadlocked. The following facts are pertinent. Jury deliberation commenced on September 21, 1993, at approximately 3:30 p.m. and continued until about 5 p.m., when the jury was sent home for the night. The next day, after a morning of deliberation, the jury sent the court a note saying that it appeared to be deadlocked. The court addressed the jury as follows: "I have a note that says you appear to be deadlocked. I will say this, that although you've deliberated for some time, and you've certainly done it very intensely this morning, it probably should be given more time before we reach a conclusion that you may be deadlocked. And this is what I would suggest that we discontinue deliberations until after lunch. Go out. Have a long lunch. Come back at two o'clock. In the meantime, I would urge you to reconsider whatever your position might be. While your own opinion is of the utmost importance, I want you to consider what others have to say. And reflect on that during this period of time. I'm going to ask you to come back then. We'll let you know when you can begin your deliberation again and get the

---

[1] The Chip Smith charge was developed in the case of *State* v. *Smith*, 49 Conn. 376, 386 (1881), to instruct the jury as to its duties in the event of deadlock. The jurors are charged, inter alia, to "pay proper respect to each other's opinions, and listen with candor to each other's arguments" in order to arrive at an unanimous verdict. Id.

exhibits in to you. And see what you can do then. I know you have made every effort and that your efforts have been sincere. But again I would ask you to reexamine and reconsider whatever your position might be. I'll ask that this be marked as a court's exhibit. And we will adjourn until two o'clock."

Later that day, the jury sent another note to the court indicating that it was deadlocked. The court again instructed the jury: "Yet in order to bring six minds to a unanimous result, all of the jurors should examine with candor, the question of guilt or innocence with due regard and deference to the opinion of the other jurors in conferring together. The jury ought to pay proper respect to each others opinions and listen with an open mind to each others argument. If much the larger number of the panel are of, are for a conviction rather, a dissenting juror should consider whether the doubt in his or her mind is a reasonable one when it makes no impression upon the minds of so many men and women equally honest, and equally intelligent, all of whom have heard the same evidence with the same attention and with equal desire to arrive at the truth and under the sanction of the same oath. On the other hand, if the majority are for acquittal, the minority ought seriously to ask themselves whether they may not reasonably and ought not to doubt the conclusion of the judgment which is not, at which is not concurred in it by most of those with whom they are associated and distrust the weight of sufficiency or to the weight or the sufficiency of the evidence which fails to carry a conviction to the minds of fellow jurors. Again, asking you to go back, reflect, listen to each other. Try one more time to see if you cannot reach a unanimous verdict."

At the end of the day, the court excused the jury for the day, commenting: "You have listened very carefully to the court's instructions and you have taken

them to heart. And I am very grateful for that. It would seem to me that everybody ought to go home, get a good night's rest, come back tomorrow morning. Make one more try at it at that time after you've had some chance to put some things in perspective. Reconsider my last instructions which were basically that you listen to one another. . . . Again, you are to use your own conscience and your own judgments in this matter, no matter what I say about trying to reach an agreement. Obviously, we try to avoid having to have a retrial.''

The following morning, the court reinstructed the jury on the presumption of innocence, reasonable doubt and credibility of witnesses. The court made clear in its remarks that its reinstruction on these points of law was intended only to assist the jury in its deliberations.

The defendant now claims that the Chip Smith charge should not have been given more than once and that it was coercive. The defendant failed to preserve this claim at trial but urges this court to review it under *State* v. *Golding*, supra, 213 Conn. 233. We conclude that it is not entitled to review under *Golding*.

"Under *Golding*, a defendant can prevail on an unpreserved claim of constitutional error 'only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt.' '' *State* v. *Crosby*, 34 Conn. App. 261, 264, 641 A.2d 406, cert. denied, 230 Conn. 903, 644 A.2d 916 (1994), quoting *State* v. *Golding*, supra, 213 Conn. 239–40.

"The first two conditions are determinations of whether a defendant's claim will be reviewed, and the third condition involves a review of the claim itself." *State* v. *Crosby*, supra, 34 Conn. App. 264. "In the absence of any one of these conditions, the defendant's claim will fail." *State* v. *Golding,* supra, 213 Conn. 240.

The court gave the charge when advised that the jurors were deadlocked. The court instructed the jury with the charge first approved by our Supreme Court in *State* v. *Smith,* supra, 49 Conn. 386, which has been consistently upheld. *State* v. *Ryerson,* 201 Conn. 333, 349, 514 A.2d 337 (1986); *State* v. *Avcollie,* 188 Conn. 626, 641, 453 A.2d 418 (1982), cert. denied, 461 U.S. 928, 103 S. Ct. 2088, 77 L. Ed. 2d 299 (1983). The defendant does not challenge the court's charge directly but instead claims that the special circumstances of this case rendered the instruction harmful error.

The defendant contends that those special circumstances include that the court gave the Chip Smith instruction more than once. This, however, was not the case. The transcript shows that the court presented the instruction to the jury only once. On the second day of deliberations, prior to the luncheon recess, the jury had communicated by its first note that it was deadlocked. The court acknowledged receipt of this note by sending the jurors to lunch and telling them, in a casual manner, to think of what the other jurors had to say. This was not a formal Chip Smith charge instructing the jurors on deliberation, but rather the court's informal comment to the jury to relax over a long lunch and for each to think about what the others' opinions were. The Chip Smith charge was given to the jury on the second day of deliberation in response to its second note. This note said it was deadlocked with a vote.

The note did not articulate whether the majority favored conviction or acquittal.

At the close of court that day, the jury was returned to the courtroom prior to adjourning. The court commended the jurors for putting in a hard day, advised them to get a good night's rest and to return in the morning. The court reminded the jurors of its earlier instructions regarding listening to one another, considering how the majority was leaning and for each to use his or her own conscience and judgment. It also told the jury that "obviously we try to avoid having to have a retrial."

These brief remarks, part of the court's comments in recessing court for the day, are not tantamount to a formal Chip Smith charge. They served only as a reminder to the jury of the earlier instructions.

In *State* v. *Avcollie*, supra, 188 Conn. 626, the jury sent a note to the court stating that it was deadlocked eleven to one for conviction. Our Supreme Court held that the fact that the court knew that there was a lone dissenter did not make the Chip Smith charge coercive, inasmuch as the nature of the division was disclosed to the court voluntarily, without solicitation. Id., 641.

This court recently held that "[t]he Chip Smith charge . . . resembles those instructions held to be nonconstitutional in nature . . . . The Chip Smith charge does not concern the elements of a crime, but deals only with the role of the jurors and their duties during the deliberative process." *State* v. *Lyons*, 36 Conn. App. 177, 189, 649 A.2d 1046 (1994). In *Lyons*, this court concluded that a challenge to a similar charge, given twice, fails the second prong of *Golding* because it was "not of con-

stitutional magnitude and [did] not allege the violation of a fundamental right." Id., 187–90. This is also the case here.

The judgment is affirmed.

In this opinion the other judges concurred.