## STATE OF CONNECTICUT *v.* VASKA ANDERSON (AC 17456)

Foti, Schaller and Dupont, Js.

Argued June 5—officially released September 18, 2001

*Wesley S. Spears,* for the appellant (defendant).

*Nancy L. Chupak,* deputy assistant state's attorney, with whom, on the brief, were *James E. Thomas,* state's attorney, and *Carl E. Taylor,* senior assistant state's attorney, for the appellee (state).

*Opinion*

DUPONT, J. This case comes to us on remand from our Supreme Court. See *State* v. *Anderson,* 255 Conn.

425, 773 A.2d 287 (2001). The defendant, Vaska Anderson, previously appealed to this court from the judgment, rendered after a jury trial, finding him guilty of possession of more than one kilogram of marijuana with intent to sell by a person who is not drug-dependent in violation of General Statutes § 21a-278 (b), conspiracy to distribute more than one kilogram of marijuana by a person who is not drug-dependent in violation of General Statutes §§ 53a-48 (a) and 21a-278 (b), and possession of more than one kilogram of marijuana with intent to sell within 1500 feet of a school in violation of General Statutes § 21a-278a (b).[1] We originally reversed the judgment and remanded the case for a new trial on the ground that a juror's negative statements about the defendant undermined the structural integrity of the tribunal. *State* v. *Anderson*, 55 Conn. App. 60, 738 A.2d 1116 (1999). Our Supreme Court reversed our decision, concluding that we improperly exercised our supervisory powers, and remanded the case to us with direction to consider the defendant's remaining claims.[2] *State* v. *Anderson*, supra, 255 Conn. 447–48.

On appeal, the defendant's remaining claims are that the trial court improperly (1) failed to give a curative instruction concerning the juror misconduct, (2) denied the defendant's motion for a mistrial when the jury indicated that it was deadlocked and (3) instructed the jury concerning proof beyond a reasonable doubt. Id.,

[1] The defendant was charged with two other crimes, assault of a peace officer in violation of General Statutes § 53a-167c (a) and failure to appear in the first degree in violation of General Statutes § 53a-172 (a). He was found not guilty as to those charges. The defendant was sentenced to a total effective sentence of fourteen years.

[2] The original panel of judges in *State* v. *Anderson*, supra, 55 Conn. App. 60, included Judge Hennessy, who had been named a state referee at the time of remand. The original panel also included Judge Dupont, who is also a state referee. Pursuant to General Statutes § 52-434c, the Chief Judge may assign no more than one state referee to sit on any one panel. The appeal was therefore reargued before a new panel.

428 n.1. We conclude that the trial court did not act improperly and affirm the judgment of the trial court.

The facts underlying the defendant's arrest are unrelated to the defendant's claims and we need not restate them. See *State* v. *Anderson*, supra, 55 Conn. App. 62–63. The facts relating to the defendant's first and second claims are as follows: "The trial was conducted in front of six jurors and three alternate jurors. After the conclusion of the third day of trial, the trial judge was approached by an alternate juror, M, who indicated that she wanted to speak to the judge. The trial judge instructed the courtroom clerk to speak with the juror. M told the clerk that one of the jurors, L, had stated to the other jurors that he knew the defendant or had seen him 'on the street,' that the defendant was not a nice person and that 'they're going to get this guy for something.' The clerk informed the trial judge of M's statements, and the trial judge called counsel into court and had the clerk disclose M's statements to them. The next day when court reconvened, the trial judge instructed the clerk to state for the record the statements M made to him. The trial judge decided that it would be necessary to call M into open court to ascertain exactly what she overheard or what had been said to her. Counsel would be given the opportunity to submit questions to the court for the court to ask the juror.

"M testified that L stated to the other jurors that he knew the defendant and had seen him 'on the street,' that the defendant was 'not a very nice person' and that 'they're going to get this guy for something.' She testified that when she heard the statements, she thought that it did not seem right to her and that she should bring this matter to the court's attention. She said that she realized that L did not know the defendant personally. M also said that at a subsequent break in the jury deliberating room, another juror asked her what she thought about what L had said and then commented that 'it

didn't seem right.' When M was asked by the trial judge if she could sit fairly and impartially and decide the case solely on the basis of the evidence presented, M answered, 'Yes.'

"The court then examined L. L stated that he had realized after the trial began that he recognized the defendant as a man he had seen once before when L worked as an automobile mechanic, towing vehicles. L stated that he told the other jurors in the jury room that he knew the defendant. L also stated that he had no idea if the defendant was a nice person because he had never spoken with him and saw him only on that one occasion for a short period of time. L twice denied telling the other jurors that the defendant was not a very nice person and that 'they' would get him for something.

"On the basis of the testimony of M and L, the trial judge determined that a separate inquiry of the remaining five jurors and two alternates would be necessary. Juror W testified that another juror, while in the jury room, said that he knew the defendant on the street in the past. She stated that she could keep an open mind and decide the case on the basis of the evidence. Juror T testified that in the jury room with all of the jurors present, another juror said that he thought he saw the defendant once and that the defendant was 'a pretty tough fellow.' T said that he 'tightened up a little bit' when he heard the statements. When asked if he could decide the case fairly, T replied, 'Absolutely yes.' He also stated that he could put aside what he had heard and decide the case on the basis of the evidence.

"Jurors P and R testified that they did not hear any statements concerning the defendant. Juror K testified that she heard a juror mention that he passed the defendant on the street once and that she heard the juror say something to the effect that the defendant 'did bad'

and 'he knows he is in trouble.' When asked if she could be fair and impartial, K responded, 'Oh sure. It hasn't changed anything.' She stated she could put the statements aside and decide the case on the basis of the evidence. Juror A, an alternate, testified that he heard one juror state that he had seen the defendant on the street, but that no statements were made concerning what kind of person the defendant was or what should happen to the defendant, and that what he heard would in no way affect his decision. Juror C, another alternate, testified that one juror stated that he knew the defendant, not personally, but that he had seen the defendant 'on the street.' C also testified that nothing was said as to whether the defendant was a bad person or concerning what should happen to him.

"Thus, three of the jurors testified to hearing L's statements regarding the defendant, namely, that the defendant 'was not a very nice person,' that the defendant is 'a pretty tough fellow,' that 'he did bad' and 'he knows he is in trouble,' and that 'they're going to get this guy for something.' Two jurors had no recollection whatsoever; the rest of the jurors and alternate jurors who heard something heard statements to the effect that L either knew the defendant or had seen him 'on the street.' The trial judge instructed all of the jurors and the alternate jurors that they must decide the case solely on the basis of the evidence, and all of them testified that they could decide the case fairly and impartially." Id., 63–66.

After the court questioned the jurors, the defendant requested that L be removed from the jury panel. The state agreed that they should discharge L and replace him with one of the alternates. The defendant then moved for a mistrial, acknowledging that the trial court had fully complied with the mandates of *State* v. *Brown*, 235 Conn. 502, 668 A.2d 1288 (1995) (en banc), and had made an adequate inquiry into the alleged juror misconduct. The defendant admitted that L's statement

that he knew the defendant from the street, in isolation, did not prejudice the defendant. The defendant argued, however, that those statements combined with the other comments, such as the defendant was a "bad person" and that the jury would "get him for something," compromised his right to a fair and impartial jury. The defendant therefore claimed that no action short of a mistrial would be sufficiently curative. The state argued that the trial should proceed with the remaining jurors and alternate jurors. The trial court discharged L from the juror panel and denied the defendant's motion for a mistrial. The final deliberating body consisted of four jurors who had heard some of L's remarks and two jurors who had not heard any of L's statements.

I

The defendant first claims that the trial court improperly failed to give a curative instruction concerning the juror misconduct, thus depriving him of a fair trial. The defendant argues that the court's voir dire of each juror at the time that the remarks came to the court's attention was insufficient to cure the harm caused by the juror's misconduct. The defendant claims that the failure to give a curative instruction during the charge at the conclusion of the case that directly addressed the excused juror's comments left it to the jury's conjecture whether to consider the statements of the excused juror or to consider that juror's credibility during deliberation. According to the defendant, a curative instruction would have obviated any prejudice resulting from the excused juror's statements. See *State* v. *Wooten,* 227 Conn. 677, 694, 631 A.2d 271 (1993). The defendant also asserts that the remaining jurors might have discussed the excused juror's comments in disobedience of the trial judge's direct individual instruction to each juror to the contrary.[3]

---

[3] The defendant, who is a member of a minority race, notes that the juror who made the negative statements was the only minority juror seated on

The state argues that because the defendant never objected to the charge's failure to contain a curative instruction, we should not review the claim. See *State* v. *Pinnock*, 220 Conn. 765, 796, 601 A.2d 521 (1992). The state argues, in the alternative, that the trial court's charge addressed the issue of extrinsic evidence and that the trial judge's individual voir dire already had cautioned the jurors not to consider extrinsic evidence and to decide the case solely on the evidence presented. Our Supreme Court's remand to us requires us to review the claim.[4] We agree with the state's alternative argument.

The following additional facts are relevant to this claim. When the trial judge conducted a voir dire concerning the excused juror's comments, he did not take extensive notes because he "wanted to look right at the jurors, observe them as they were talking, observe their reactions and form [his] opinion . . . ." The court then stated that it "did observe all of these jurors very closely and [it] thought all of them were being very honest and very candid and very genuine and sincere in their statement to the court. . . . [T]his would not in any way affect their judgment in the case . . . ." The court found the jurors' statements to be "very credible." The court stated that "based on [its] assessment of the jurors that came in to take the stand and [were] aware of the jurors' oath . . . we do not have a situation where they have formed an opinion of the accused . . . that is going to affect the way they view the accused or impact on their ability to be objective and impartial."

the original panel. The defendant argues that this may have given additional credibility to the excused juror and his statements, and "would likely influence the remaining jurors to convict a minority defendant."

[4] Furthermore, we can review the unpreserved claim under the principles of *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), because the record is adequate for our review and the claim involves the allegation of a violation of a fundamental right. See *State* v. *Thurman*, 10 Conn. App. 302, 306–307, 523 A.2d 891, cert. denied, 204 Conn. 805, 528 A.2d 1152 (1987).

Following the parties' closing arguments, the court's charge to the jury included the following statements: "You, as I stated, are the sole judges of the facts. . . . You may not go outside the evidence to find facts. You may not resort to guesswork or conjecture or speculation or suspicion. You must not be influenced by any personal likes or dislikes, or opinions, prejudices or sympathy.

\* \* \*

"The evidence from which you are to decide what the facts consist of [is]: one, the sworn testimony of witnesses, both direct and cross-examination and regardless of the witnesses who testified in this trial; and two, the full exhibits, that is, those items or documents which have been marked as full exhibits and received into evidence.

\* \* \*

"Testimony that has been excluded or stricken or that you have been instructed to disregard, that is not evidence in which you can rely upon in reaching your verdict. If some testimony has been received for limited purposes, and I gave a limited instruction, you must follow that limited instruction.

"*Anything you have seen or heard when the court was not in session, that obviously is not evidence.* You are to decide the case solely on the evidence received here during the orderly course of the trial." (Emphasis added.)

Although the court did not address the juror's comments directly during the charge to the jury, we are persuaded that it adequately addressed, by implication, the excused juror's comments in its instruction. The instruction alone clarifies that the jury should not have considered any extrinsic evidence, including the statements made by the excused juror. The court explicitly

made that point several times in the charge to the jury. A curative instruction directly reiterating the excused juror's comments or discussing the fact that a juror made negative statements would have unnecessarily brought those negative comments to the forefront of the jurors' minds many days after the comments were made. Moreover, it would have alerted those jurors who did not originally overhear the excused juror's comments to the negative feelings held by the excused juror. A curative instruction with direct reference to the juror's comments may have been more detrimental to the defendant's case than the instruction that the court delivered, which told the jurors to consider only the evidence that was presented at trial.

In addition to the general charge to the jury, the court also individually addressed the jurors at the time it first became aware of the juror's statements. That voir dire, with input from both parties, was exemplary and emphatically cautioned each juror that he or she should not consider the excused jurors comments during deliberations. Absent contrary evidence, there is no reason to believe that the members of the jury did not follow the court's instruction. See *State* v. *Rouleau,* 204 Conn. 240, 254, 528 A.2d 343 (1987); *State* v. *Leonard,* 31 Conn. App. 178, 196, 623 A.2d 1052, cert. granted, 226 Conn. 912, 628 A.2d 985 (1993) (appeal withdrawn January 7, 1994). We conclude that the lack of a curative instruction directly addressing the excused juror's comments did not deprive the defendant of a fair trial.

II

The defendant next claims that the court improperly denied his motion for a mistrial when the jury indicated that it was deadlocked, thus depriving him of his right to a trial free of coercion. After the jury had delivered a note indicating that it was deadlocked, the court deliv-

ered a "Chip Smith" charge to the jury.[5] See *State* v. *Smith*, 49 Conn. 376, 386 (1881). The defendant concedes our Supreme Court has upheld the "Chip Smith" charge. *State* v. *Feliciano*, 256 Conn. 429, 439, 778 A.2d 812 (2001); *State* v. *Wooten*, supra, 227 Conn. 707; *State* v. *Ryerson*, 201 Conn. 333, 349–50, 514 A.2d 337 (1986). He argues, however, that the delivery of a "Chip Smith" charge was inappropriate under the circumstances of this case and prejudiced his right to a fair trial.

The following additional facts are relevant. Jury deliberations began on March 5, 1997, at 11:43 a.m., continuing until the close of the court day. The deliberations continued on March 6, 1997, until 2:40 p.m., at which time the jury indicated that it was deadlocked. The court stated that it would consider a "Chip Smith" charge, and the state requested such an instruction. The defendant filed a motion for a mistrial on the grounds that the jury had deliberated long enough and that, on the basis of the totality of the circumstances, a "Chip Smith" instruction would be inappropriate. The court denied the defendant's motion, stating that it believed that the jurors had promised to stick to their convictions during voir dire before the trial had began and, therefore, there was not an inherent danger that a juror would go against his or her convictions. The court proceeded to deliver the "Chip Smith" charge instruction, and the jury resumed deliberations. On March 7, 1997, at 12:52 p.m., the jury returned its verdict.

The defendant argues that the jury's impartiality was already in question because of the excused juror's mis-

---

[5] A "Chip Smith" instruction reminds the jurors that they must act unanimously, while also encouraging a deadlocked jury to reach unanimity. See D. Borden & L. Orland, 5 Connecticut Practice Series: Connecticut Criminal Jury Instructions (2d Ed. 1997) §§ 4.4 and 4.5. The defendant is not challenging the language of the "Chip Smith" charge, and, for that reason, we need not reprint it here. The charge delivered is substantially similar to the charge presented in *State* v. *Wooten*, supra, 227 Conn. 705–706 n.13, and *State* v. *Garcia*, 13 Conn. App. 67, 68 n.1, 534 A.2d 906 (1987).

conduct. He argues that there is no way to ascertain from the record whether the jury considered the excused juror's comments. The defendant argues that in light of the circumstances of this case, in particular, the lack of a curative instruction and the excused juror's comments, the "Chip Smith" instruction prejudiced his right to a fair trial. We are not persuaded.

Even though the language of the "Chip Smith" charge has been described as "inherently coercive in that [the instructions] are imbalanced in favor of the majority position"; *State* v. *Beliveau*, 237 Conn. 576, 598 n.1, 678 A.2d 924 (1996) (*Berdon, J.*, dissenting); our courts consistently have upheld the delivery of the charge and have recognized it as an acceptable method of achieving jury unanimity. See *State* v. *Ryerson*, supra, 201 Conn. 349–50; *State* v. *O'Neill*, 200 Conn. 268, 284, 511 A.2d 321 (1986). The purpose of the instruction is to prevent a hung jury by urging the jurors to reach an agreement by continuing deliberations. The instruction "makes clear the necessity, on the one hand, of unanimity among the jurors in any verdict, and on the other hand the duty of careful consideration by each juror of the views and opinions of each of his fellow jurors . . . ." (Internal quotation marks omitted.) *State* v. *Wooten*, supra, 227 Conn. 707.

A "Chip Smith" charge directly addresses the jurors who hold the minority view in deliberations and urges them to reconsider their position. This court, however, previously has decided that the "Chip Smith" charge does not coerce the minority into following the majority verdict. *State* v. *Lyons*, 36 Conn. App. 177, 188, 649 A.2d 1046 (1994). Our Supreme Court recently upheld the repeated delivery of a "Chip Smith" charge in a situation where alleged jury misconduct took place during the deliberations. *State* v. *Feliciano*, supra, 256 Conn. 440–41.

The defendant does not challenge the language of the charge, and, as previously cited, our courts consistently have upheld the language of a "Chip Smith" charge. In the present case, the court determined that the jury was able to deliberate with impartiality and that the court's curative measures adequately ensured a fair trial. The delivery of a "Chip Smith" charge on the facts of this case did not deprive the defendant of his constitutional right to a fair trial.

## III

The defendant's final claim is that the court improperly instructed the jury concerning proof beyond a reasonable doubt. The defendant claims that the charge was flawed in that portions were worded in the negative and were unduly confusing.[6]

[6] The court delivered the following charge concerning reasonable doubt: "That brings me, of course, to the standard of proof beyond a reasonable doubt and the meaning of that term. A reasonable doubt means reasonable doubt can be arrived at by emphasizing the word reasonable. It is not a surmise, a guess, or a mere conjuncture, nor is a doubt suggested by the ambiguity or consent of the jury or not warranted by the evidence. It is such a doubt as in the serious affairs that concern you, you would heed, that is, such a doubt as would cause reasonable men and women to hesitate to act upon i[n] this matter of importance.

"It is not a hesitation springing from any feelings of pity or sympathy for the accused, or for any other person who might be affected by your decision. It is, in other words, ladies and gentlemen, a real doubt, an honest doubt, a doubt that has its foundation in the evidence or lack of evidence. It is a doubt that is honestly entertained and is reasonable in light of the evidence after a fair comparison and careful examination of the entire evidence presented in the case.

"Proof beyond a reasonable doubt does not mean proof beyond all doubt. The law does not require after absolute certainty on the part of the jury before it returns a verdict of guilty. The law requires that after hearing all of the evidence, if there is something in the evidence or lack of evidence that leaves in the minds of the jurors as reasonable men and women, a reasonable doubt as to the guilt of the accused, then the accused must be given the benefit of that doubt and acquitted.

"Proof beyond a reasonable doubt is proof that precludes every reasonable hypothesis except guilt and is inconsistent with any other rationale conclusion. As stated, absolutely in the affairs of life is almost never attainable and the law does not require absolute certainty on the part of the jury before

Specifically, the defendant challenges as improper three portions of the court's instructions regarding the definition of reasonable doubt. The state argues that our Supreme Court has consistently upheld language similar to the challenged portions of the instructions and we should therefore uphold the charge in the present case. We agree with the state that the charge was proper.

The standard of review of jury instructions is well settled. This court shall make an inquiry to determine whether it is possible that the court's instructions misled the jury. See *State* v. *DelVecchio*, 191 Conn. 412, 421, 464 A.2d 813 (1983). "In determining whether it was . . . reasonably possible that the jury was misled by the trial court's instructions, the charge to the jury is not to be critically dissected for the purpose of discovering possible inaccuracies of statement, but it is to be considered rather as to its probable effect upon the jury in guiding them to a correct verdict in the case. . . . The charge is to be read as a whole and individual instructions are not to be judged in artificial isolation from the overall charge. . . . The test to be applied . . . is whether the charge, considered as a whole, presents the case to the jury so that no injustice will result. . . . *State* v. *Delvalle*, 250 Conn. 466, 470, 736 A.2d 125 (1999). As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper. . . . *State* v. *Denby*, 235 Conn. 477, 485, 668 A.2d 682 (1995)." (Internal quotation marks omitted.) *State* v. *Respass*, 256 Conn. 164, 182, 770 A.2d 471 (2001).

---

the jury returns a verdict of guilty.

"The state is not required to prove guilt beyond all doubt or to a mathematical or absolute certainty; however, if you can reconcile all the facts through with any reasonable theory [consistent] with innocence, you cannot find him guilty. On the other hand, if you find that the proven facts establish a guilt of the accused beyond a reasonable doubt, then the proper verdict would be guilty."

The defendant first points to the court's statement that "[reasonable doubt] is such a doubt as in the serious affairs that concern you, you would heed, that is, such a doubt as would cause reasonable men and women to hesitate to act upon in this matter of importance." That language is very similar to the "hesitate to act" language that the United States Supreme Court suggested should be used in *Holland* v. *United States*, 348 U.S. 121, 140, 75 S. Ct. 127, 99 L. Ed. 150 (1954). The "hesitate to act" language also has been approved by our Supreme Court. *State* v. *Morant*, 242 Conn. 666, 688, 701 A.2d 1 (1997); *State* v. *Smith*, 210 Conn. 132, 149–50, 554 A.2d 713 (1989). The court's language in the present case is nearly identical to a reasonable doubt instruction we recently affirmed in *State* v. *Owens*, 63 Conn. App. 245, 260–62, 775 A.2d 325, cert. denied, 256 Conn. 933, 776 A.2d 1151 (2001).

We are not convinced that the language should be in the affirmative, such as "willing to act" instead of "hesitate to act." Hesitancy to act on a doubt is more consistent with everyday behavior and is more consistent with the concept of refusing to find a defendant guilty due to reasonable doubt, than "willing to act" on a reasonable doubt.

The defendant next argues that the court's instruction that "[reasonable doubt] is a doubt that is honestly entertained and is reasonable in light of the evidence after a fair comparison and careful examination of the entire evidence presented in the case" was improper because it compared "reasonable doubt" with the concept of "honest doubt." This court and our Supreme Court consistently have upheld this type of language in jury instructions. *State* v. *Montgomery*, 254 Conn. 694, 730–31, 759 A.2d 995 (2000); *State* v. *Hines*, 243 Conn. 796, 816, 709 A.2d 522 (1998). We find nothing inherently unfair in the instructions.

The last specific portion of the jury instruction that the defendant challenges provides: "The state is not

required to prove guilt beyond all doubt or to a mathematical or absolute certainty; however, if you can reconcile all the facts through with any reasonable theory [consistent] with innocence, you cannot find him guilty. On the other hand, if you find that the proven facts establish a guilt of the accused beyond a reasonable doubt, then the proper verdict would be guilty." The defendant claims that this language was confusing and unintelligible. Again, that type of language consistently has been upheld by our appellate courts. *State* v. *Small*, 242 Conn. 93, 115, 700 A.2d 617 (1997); *State* v. *Ellis*, 232 Conn. 691, 705–706, 657 A.2d 1099 (1995). In the present case, the court instructed the jury to reconcile the facts and that if there is "*any* reasonable theory consistent with innocence, you *must* find him not guilty." (Emphasis added.) That language did not prejudice the defendant's right to a fair trial.

When we look at the instructions as a whole, we conclude that the court correctly conveyed the concept of reasonable doubt to the jury. Those instructions, taken as a whole, are nearly identical to those affirmed by this court in *State* v. *Rodriguez*, 63 Conn. App. 529, 532, 777 A.2d 704, cert. denied, 256 Conn. 936, 776 A.2d 1151 (2001).

The judgment is affirmed.

In this opinion the other judges concurred.